**STATE**

v.

**Jose Pupo CARRERA.**

**No. 86–332 C.A.**

Supreme Court of Rhode Island.

July 1, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., Providence, for plaintiff.

William Reilly, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, Providence, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, Jose Pupo Carrera (Carrera), was charged by criminal information with assault with intent to murder Frances L. Brown (Brown), in violation of G.L. 1956 (1981 Reenactment) § 11–5–1, as amended by P.L. 1981, ch. 76, § 1. On November 7, 1985, a Superior Court jury, after a four-day trial, found Carrera guilty. Carrera now appeals, raising three issues.

The unfortunate series of events giving rise to the charge levied by the state against Carrera began to unfold on March 27, 1985. On that date Brown, then eight months' pregnant, was discharged from a hospital after having been treated for one week for injuries sustained in an alleged beating by Carrera. She returned to the third-floor Providence apartment she shared with Carrera and told him that she had been informed by a social worker that she might lose custody of her soon-to-be-born infant if she did not move into a "women's shelter." Brown later began packing her things in anticipation of leaving.

. On the evening of March 27, Brown did not leave the premises but instead decided to sleep in the second-floor apartment occupied by two friends. Brown awoke between 5:30 and 6 a.m. and returned to her thirdfloor apartment, where she washed and dressed. She then sat on the edge of a bed and began watching a television program. Suddenly Carrera grabbed Brown from behind, Brown observing a pair of scissors in Carrera's hand. Carrera first stated an accusation about a neighbor's having admired Brown and then told Brown that if he, Carrera, could not have her, nobody else would. He then stated, "I'll either kill you or mess your face up so bad that nobody else would want you" and,

pinning Brown to the bed, began to cut her head and face. At some point during the attack both Brown and Carrera fell to the floor. Carrera continued his slashing of Brown's face, accusing Brown of having an affair with the man and woman on the second floor.

The second-floor neighbor, Christine Wilcox, corroborated much of Brown's testimony. Wilcox was in her second-floor apartment when she heard cries of "Christine" emanating from the third floor. She rushed upstairs and observed, through the doorway, Carrera sitting on Brown, stabbing her with scissors he was holding in his right hand. Soon after Christine's arrival, Brown was able to escape Carrera's grasp and run downstairs to the first floor where her sister resided. She was transported to Rhode Island Hospital and shortly thereafter gave birth to a child.

At trial Brown testified regarding the circumstances of Carrera's assault. She admitted that she had been, in the past, a serious drug user but claimed that her drug use was presently limited to a little marijuana "every now and then" and "little bit of cocaine." On cross-examination, counsel for Carrera attempted to delve into the details of Brown's drug use in an attempt to attack Brown's credibility. The trial justice sustained an objection by the state to a question that attempted to elicit information regarding whether Brown's baby, born soon after the assault, was addicted to drugs at birth. The state also objected to and blocked questions regarding Brown's past suicide threats and her history of drug overdoses.

Detective Alfred Ferreira of the Providence Police Department also testified at Carrera's trial. He told the jury of his investigation of the assault. During Carrera's cross-examination of Ferreira, the state objected to a question regarding whether, during Ferreira's interview of Brown, Ferreira found Brown "reluctant to accuse [Carrera]."

After the completion of the state's case, Carrera made a motion for a judgment of acquittal. Carrera claimed that the evi-

dence did not support a conviction on the charge of assault with intent to murder but rather would only sustain a conviction on a charge of assault. Lacking, Carrera maintained, was proof of intent to murder. The trial justice denied the motion.

Carrera offered a different picture of the events of March 28, 1985, during the presentation of his case. Carrera maintained that he was sleeping with Brown on the morning of March 28. When he awoke, Brown was no longer in the bed. Brown soon returned to the room in a "drugged up" state. Carrera told her to get out, and Brown left. She later returned "with something in her hands" and "started cutting herself up." Carrera could not stop her because he was on crutches and was thus relatively immobilized.[1] Carrera stated that Brown's eyes were strangely "wide open" before she cut herself.

When Carrera completed his testimony, he attempted to introduce a discharge report from Rhode Island Hospital dated May 9, 1985, stating that Brown was a "known drug addict" and that her child was "addicted." The state objected to the introduction of the report on the grounds that the hospital record was "hearsay within hearsay." The trial justice sustained the objection, and the report was excluded. Offered and admitted, however, were several hospital records describing Brown's drug use and suicide attempts.

Carrera's appeal is threefold. First, Carrera argues that the trial justice erroneously restricted cross-examination of Brown and Detective Ferreira in violation of Carrera's constitutional right of confrontation. Second, Carrera asserts that the trial justice impermissibly refused to permit the defense to place in evidence hospital records that indicated that at the time of the birth of Brown's baby, the infant was addicted to drugs. Third, Carrera

maintains that the trial justice wrongfully denied Carrera's motion for judgment of acquittal on the charge of assault with intent to murder. We turn our attention first to the question of whether the trial justice erred when he restricted cross-examination of Brown and Detective Ferreira.

The right of a criminal defendant to cross-examination is guaranteed by the Sixth Amendment to the United States Constitution and art. I, § 10, of the Rhode Island Constitution. *See Davis v. Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Burke,* 522 A.2d 725 (R.I. 1987). The right of cross-examination dictates that "reasonable latitude be given the cross-examiner." *State v. Anthony,* 422 A.2d 921, 924 (R.I. 1980). Cross-examination of a witness with respect to his or her ability to perceive and remember facts is an integral part of the guarantee of the right of confrontation. *Burke,* 522 A.2d at 732. "It is axiomatic that the ability of a witness to remember accurately and to relate the events in question is of crucial importance to a jury's assessment of that witness's credibility." *State v. Manocchio,* 496 A.2d 931, 934 (R.I. 1985), *vacated, Rhode Island v. Manocchio,* — U.S. —, 106 S. Ct. 1627, 90 L. Ed. 2d 175 (1986).

■ Whether a witness may be impeached with evidence of his or her present or prior drug use is an issue that has troubled and divided courts for decades. *See McCormick on Evidence,* § 45 at 105–06 (Cleary 3d ed. 1984); Annot. 65 A.L.R. 3d 705 (1975). We hold that evidence of use of drugs is admissible *to show that the witness was under the influence of those drugs at the time of the events to which he or she is testifying.*[2] Such evidence of drug use bears on the question of whether the witness was accurately perceiving the events around him or her, certainly a matter of interest to the finder of fact.

---

**1.** Sometime prior to March 28, 1985, Carrera had sustained a leg injury that required him to wear a leg cast.

**2.** *See, e.g., Doe v. State,* 487 P.2d 47 (Alaska 1971)(reversible error to limit cross-examination of a witness regarding whether the witness was under the influence of drugs at the time of

the events to which he was testifying); *Gregory v. State,* 9 Ark.App. 242, 657 S.W.2d 570 (1983); *People v. Roberts,* 37 Colo.App. 490, 553 P.2d 93 (1976); *Commonwealth v. Adrey,* 376 Mass. 747, 383 N.E.2d 1110 (1978); *Commonwealth v. Yost,* 478 Pa. 327, 386 A.2d 956 (1978); *State v. Mitchell,* 571 P.2d 1351 (Utah 1977).

We now turn to the case at hand. During Carrera's cross-examination of Brown, the following colloquy took place:

"Q. You testified yesterday, when your baby was born, I believe, on the 29th of March at Woman & Infants [Hospital], that the baby was physically okay?

"A. Yes, he was.

"Q. As a matter of fact, Miss Brown, the baby was born an addict?

"A. Oh, no.

[State]: Objection.

The Court: Objection sustained."

Carrera contends that the trial justice erred in refusing to allow Brown to answer this line of inquiry. If Brown's baby was addicted to drugs at the time of his birth just a short time after the assault, Carrera claims, this would serve to prove that Brown was a drug user at the time of the incident.

■ This thrust of Carrera's cross-examination of Brown regarding her infant's alleged addiction at birth was valid and relevant. Brown had testified that she had been "drug free." Certainly, as we indicated, Carrera would be entitled to show that she was not "drug free" at the time of the incidents to which she was testifying. To the extent that evidence tending to prove Brown's baby was addicted at birth would impeach Brown's claims that she was not using drugs at the time of the incident, it would be error for the trial justice to prohibit this line of questioning on relevance grounds alone.

■ The problem in the present case concerns how one proves that a mother was a drug user by virtue of the fact that her child was born addicted to drugs. The link between a child's drug addiction and a mother's drug use was in no way proved in the case before us as there was no expert testimony establishing the link between the "addicted" infant and any drug use of the mother. Absent any such evidence of a link, the sustaining of the objection to such testimony was proper.

Carrera also maintains that the trial justice impermissibly restricted cross-examination of Brown regarding her alleged threats of suicide. The questioning proceeded as follows:

"Q. You don't recall threatening suicide after he threatened to leave you?

[State]: Objection.

The Court: Objection sustained.

"Q. You have a long history of attempted suicide, don't you?

[State]: Objection.

The Court: Sustained."

■ In light of the fact that it was the thrust of Carrera's defense that Brown's injuries were self-inflicted, evidence tending to prove that Brown was attempting suicide on March 28, 1985, was relevant. Certainly, evidence of threats to commit suicide or of a history of suicide attempts would fall within the ambit of such relevant proof. Therefore, it was error for the trial justice to restrict Carrera's cross-examination of Brown with regard to her alleged threats of suicide and her history of suicide attempts.

We next address, as we must, the question of whether the confrontation clause error in this case was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). At the close of Carrera's case, counsel for Carrera produced a number of exhibits concerning Brown's past medical treatment. These documents, admitted in full, included a number of hospital emergency-room reports as well as "drug screen" reports from a hospital toxicology laboratory and were dated 1978 through 1985. The exhibits contained a number of references to various drugs including cocaine, opiates, amphetamines, barbituates, Valium, Fiorinal, and Xanax.

■ During his final argument to the jury, counsel for Carrera made reference to much of this information. Further, the jury's attention was drawn to the fact that one emergency-room report detailed a 1983 "overdose" and another outlined a 1985 incident wherein Brown ingested forty Xanax tablets in an apparent "suicidal attempt." Counsel argued fervently that this evidence raised the significant possibil-

ity that Brown's wounds were self-inflicted. In light of the fact that the jury was presented with documented evidence that not only impugned the complaining witness's credibility but also supported Carrera's theory that Brown's injuries were self-inflicted, we conclude that there was no prejudicial violation of Carrera's right of cross-examination resulting from the trial justice's limitation of the cross-examination of Brown. *See State v. Burke,* 522 A.2d at 733.

Carrera also asserts that the trial justice erred when he refused to allow Detective Ferreira to give his opinion of whether Brown was "reluctant to accuse" Carrera when she gave Detective Ferreira her statement. Carrera argues that his response was crucial in light of his defense theory that Brown "only accused Mr. Carrera when the state threatened to take her children away from her."

Carrera was essentially seeking a lay opinion from Detective Ferreira when he inquired whether the detective found Brown "reluctant." As the state accurately points out, this court has made it clear that lay-opinion testimony must meet a two-pronged test for admissibility. In *State v. Rondeau,* 480 A.2d 398, 401 (R.I. 1984), we held that in order to elicit a lay opinion, the witness must have had the opportunity to view the person or event, and the witness must supply the concrete details upon which his or her opinion was founded.

■ The record in the case before us reveals nothing that would indicate that Detective Ferreira was prepared to offer an opinion about Brown's alleged reluctance to bring criminal charges against Carrera that met the two-pronged test in *Rondeau.* Additionally, counsel for Carrera made no attempt to lay any such foundation. Thus, the trial justice was correct in prohibiting this line of questioning.

Carrera's second ground for appeal concerns the trial justice's refusal to permit Carrera to place in evidence a Rhode Island Hospital discharge summary purportedly containing information regarding Brown's treatment and condition during her 1985 stay in the hospital. The summary refers to Brown as "a known drug addict" and states that she "delivered a healthy but addicted infant." The trial justice declined to admit the summary after reviewing, *in camera,* certain records subpoenaed by Carrera and supplied by the Department of Children and Their Families (DCF) concerning Brown's children. The trial justice found that the DCF records established that Brown's new-born infant was not a drug addict and, further, that the DCF records contained no exculpatory material. The trial justice also concluded that the discharge summary was not relevant.

■ A close inspection of the discharge summary reveals that it was not admissible evidence. The summary was clearly hearsay. The summary does not provide the identity of the author of its contents, nor did Carrera present any witness to testify about who filled out the document. Indeed, as the state accurately points out, Carrera never offered any suggestion that the summary was the subject of any hearsay exception recognized by Rhode Island law.

In order to be admissible as a business record, a document must meet the requirements of Rule 803(6) of the Federal Rules of Evidence adopted by this court in *State v. Acquisto,* 463 A.2d 122 (R.I. 1983).[3] A fundamental prerequisite to the admission of any business record is an adequate foundation. There was no evidence that the

---

**3.** Rule 803(6) states as follows:

"Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

discharge summary was made "at or near the time by, or from information transmitted by, a person with knowledge." There was also no testimony from any custodian of hospital records regarding the preparation of such summaries. Thus, the foundation was inadequate to admit the document as a business record.

The summary also was not admissible under the statements-to-atreating-physician exception to the hearsay rule. *State v. Pina*, 455 A.2d 313 (R.I. 1983). There is a dearth of evidence in the record indicating that the discharge summary was prepared by a physician who had prepared such a report after having discussed the matter with Brown, the patient. The foundation was inadequate to admit the discharge summary under this hearsay exception also.

Finally, Carrera asserts that the trial justice erred in failing to grant his motion for judgment of acquittal on the charge of assault with intent to murder. The evidence adduced at trial, Carrera claims, failed to establish any intent on Carrera's part to murder Brown but instead established, at most, an intent to disfigure. The state suggests that the wounds inflicted were of such a serious nature as to be capable of causing death.

When considering a motion for judgment of acquittal, this court is bound to consider the evidence and the reasonable inferences of which it is susceptible in a light most favorable to the state. *State v. Wilshire*, 509 A.2d 444 (R.I. 1986). The motion should be denied when the evidence, without regard either to its weight or to its credibility, is sufficient to warrant a jury's finding that guilt has been established beyond a reasonable doubt. *State v. Wheeler*, 496 A.2d 1382 (R.I. 1985).

Viewing the evidence in a light most favorable to the state, we hold that the evidence supports a jury finding of guilty on a charge of assault with intent to murder. Brown sustained serious injuries *about* the head and neck *area* in Carrera's brutal attack. Stab wounds were inflicted to vital arteries in Brown's neck—certainly these wounds could have resulted in death.

Further, the record contains Carrera's own words, uttered as he grabbed Brown from behind. After insinuating that other men were interested in her, Carrera told Brown, "I'll either kill you or mess your face up so bad that nobody else would want you." The fact that Brown was fortunate enough to have survived this vicious assault in no way diminishes the force of the reasonable inference that Carrera had the requisite homicidal intent.

The defendant's appeal is denied and dismissed. The judgment of conviction appealed from is affirmed. The case is remanded to the Superior Court.