STATE

v.

Michael P. KELLY.

No. 88–70–C.A.

Supreme Court of Rhode Island.

Feb. 21, 1989.

James E. O'Neil, Atty. Gen., Caroline Cole Cornwell, Nicholas Trott Long, Asst. Attys. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on an appeal by Michael P. Kelly (defendant or Kelly), from his conviction in the Providence County Superior Court for first-degree sexual assault. G.L.1956 (1981 Reenactment) § 11–37–2 as amended by P.L. 1984, ch. 355, § 1, and § 11–37–3. We vacate the conviction and remand the case to the Superior Court for a new trial.

The evidence presented at trial established that on the morning of March 20, 1986, the victim, a seventeen-year-old girl, agreed to meet defendant later that day at his mother's apartment and to go out with him from there. At the apartment, while the two sat watching television from the bed, defendant began kissing and touching her. She testified that although she resisted both verbally and physically, eventually he held her down, undressed her, and had forcible sexual intercourse with her.

The defendant's testimony was substantially the same as the victim's. He does not deny that he had intercourse with her but argues that it was consensual. He further testified that it was she who suggested having intercourse after refusing his request for oral sex.

The victim remained at Kelly's apartment for some time after the alleged assault, trying to locate a ride home. Eventually she left on foot. Once home she was taken to the emergency room at Women and Infants' Hospital, where she was examined and a rape-test kit was employed. The jury found defendant guilty.

■ On appeal defendant first argues that it was error for the trial justice to allow the prosecutor to use a peremptory challenge to dismiss a black juror without requiring a racially neutral, nondiscriminatory explanation for the challenge. He argues that this court should adopt a broader interpretation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), than was recently followed in *State v. Chakouian,* 537 A.2d 409 (R.I.1988). In so doing, he argues, we would be joining a small number of jurisdictions that have held under the language of *Batson* and *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972), peremptory challenges of minority jurors automatically implicate the equal protection clause of the Fourteenth Amendment to the United States Constitution, and the Sixth Amendment's right to an impartial jury. We reject that argument. The holdings in both *Batson* and *Peters* are not ambiguous. They are inapplicable to the present case.

Under the Supreme Court's holding in *Batson* a defendant may require the state to give a racially neutral explanation for its peremptory challenges only if that defendant can establish a prima facie case of

purposeful discrimination in the prosecutor's selection of the petit jury. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

> "To establish such a case, the defendant first must show that he is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' * * * Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87–88 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S. Ct. 891, 892, 97 L. Ed. 1244, 1247–48 (1953)).

The Court further held that the circumstances surrounding the jury selection, such as a pattern of peremptory challenges or the prosecutor's questions and remarks during voir dire, should also be considered in deciding whether the prosecutor engaged in purposeful discrimination. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

In *Chakouian*, 537 A.2d at 413, we reviewed the *Batson* test and found that it should be literally applied. As in the case of *Chakouian*, Kelly has failed to establish even a single point necessary to initiate a *Batson* inquiry. He is not a member of a cognizable racial group relevant to this inquiry. The juror challenged was black, not a member of defendant's race, and whereas he can rely on the fact that the nature of peremptory challenges inherently creates a danger of discrimination, defendant has shown no pattern of discrimination or other circumstances during voir dire that support a finding of discriminatory motive on the part of the prosecutor.

The Supreme Court's decision in *Peters* is similarly limited to specific situations involving the systematic exclusion of a class of persons from the jury-selection system. *Peters*, 407 U.S. at 504, 92 S.Ct. at 2169, 33 L.Ed.2d at 95. It does not apply to discriminatory peremptory challenges during jury impanelment. We reject defendant's argument that *Peters* and *Batson*, when read together, create a broad antidiscrimination policy barring all potential discrimination in the jury-recruitment process. The mandates of both *Batson* and *Peters* are clear and unambiguous. No elaboration is necessary. The defendant's appeal on this issue is without merit.

Next Kelly argues that it was error for the trial justice to deny his request for the production of records from the Department of Children and Their Families (DCF). Claiming that the records were necessary for his cross-examination of a corroborating witness presented by the prosecution, defendant contends that production of these records for an in camera review was required by Rule 16 of the Superior Court Rules of Criminal Procedure and his right to confront witnesses under both the United States and the Rhode Island Constitutions. Although we hold that defendant did not have a Rule–16 right to discover this witness's DCF records, we conclude that he did have a right under the United States and the Rhode Island Constitutions to confront and cross-examine the witness with these records.

This situation arose in the following manner. On July 22, 1987, the day before defendant's trial was to begin, the state filed a supplementary response to discovery stating that the state would call a friend of the victim's as a corroborating witness to testify that the victim was visibly distraught when she returned from defendant's apartment.

Two days later, toward the end of her direct testimony, this witness revealed that she was a close friend of the victim's and had been living with her family for approximately one year. Before beginning cross-examination, defense counsel noted that the witness's obvious youth and unusual

living arrangements suggested some involvement with DCF. Believing that DCF might have records that would be valuable for impeachment purposes, defense counsel inquired whether the state had checked with DCF before making its Rule 16 response to defendant's request for discovery regarding this witness. The trial court ruled that Rule 16 did not require the state to investigate DCF records and denied defendant's motion to subpoena the records for an in camera review. The trial justice also prevented defense counsel from inquiring into this issue on cross-examination.

■ Under Rule 16(a) the attorney for the state shall permit defendant, upon request, to inspect and/or copy certain items "within the possession, custody, or control of the State." These items include "all reports or records of prior convictions * * * of persons whom the attorney for the State expects to call as witnesses." Rule 16(a)(8). We find that nothing within these rules requires the prosecution to produce records maintained by DCF. Under this rule the only records the state is required to produce are those regarding prior convictions. Since DCF records are not records or reports of convictions, they are not discoverable pursuant to Rule 16.

■ However, defendant did have a right to have these records produced pursuant to his right to cross-examination under the confrontation clauses of both the United States and the Rhode Island Constitutions. U.S. Const. Amend. VI; R.I. Const. art. 1, § 10. Under the Federal Constitution the right of a defendant to cross-examine and to test the believability and truthfulness of adverse witnesses has been found to be inherent within the confrontation clause of the Sixth Amendment. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). One way in which the cross-examiner can test the believability of adverse witnesses is to impeach or discredit them by revealing possible bias, prejudice, motive, or other weaknesses in their testimony that would tend to make them less trustworthy. *Id.* at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 354. The defendant argues that by denying him

access to this witness's DCF records, the trial justice interferred with this right to cross-examination. He contends that the witness's age and living arrangements, with a family other than her own, raise questions about her past that weigh on her present credibility as a witness and that had the DCF records been produced, they might have contained information relevant to this witness's credibility. At a minimum, Kelly suggests that the trial justice should have ordered the production of these records for an in camera view to see if they contained information that would have aided him in testing the witness's believability before the jury. We agree.

In *Davis v. Alaska* the United States Supreme Court held that

"[a] State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. * * * [A] State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." *Davis*, 415 U.S. at 320, 94 S. Ct. at 1112, 39 L. Ed. 2d at 356.

In 1987 the Supreme Court clarified *Davis*, explaining that the right of confrontation is a trial right, raising itself only when a defendant is improperly denied the ability to confront and to effectively cross-examine an adverse witness at trial. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S.Ct. 989, 999, 94 L.Ed.2d 40, 54 (1987). Therefore, although the confrontation clause does not rise to the level of a "constitutionally compelled rule of pretrial discovery" requiring the disclosure of "any and all information that might be useful in contradicting unfavorable testimony," *id.* at 52–53, 107 S.Ct. at 999, 94 L.Ed.2d at 54, it will compel a state to produce a witness's confidential records when the types of questions the defense counsel may ask during cross-examination are improperly restricted. *Id.* at 52, 107 S.Ct. at 999, 94 L.Ed.2d at 54. The Court further held that although there is a strong public interest in

protecting the confidentiality of this type of information, if some use of these records in judicial proceedings has been allowed for by the Legislature,[1] it cannot be concluded that all disclosure is prevented. *Id.* at 57–58, 107 S.Ct. at 1002, 94 L.Ed.2d at 57–58. It is clear then that, notwithstanding Rhode Island's express interest in keeping DCF records confidential, G.L.1956 (1988 Reenactment) § 42–72–8, the trial court's refusal to produce records and its limitation of defendant's cross-examination regarding the witness's prior contact with DCF were impermissible restrictions of defendant's right to confront and cross-examine this witness on the issue of credibility.

In *State v. Myers*, 115 R.I. 583, 350 A.2d 611 (1976), this court applied the Supreme Court's interpretation of the Sixth Amendment in *Davis* to this state's right to confrontation. R.I. Const. art. 1, § 10. In *Myers* we found that *Davis* went beyond its immediate factual confines to stress the importance of cross-examination as defendant's principal method of confronting and testing the veracity of an adverse witness. *Myers*, 115 R.I. at 589, 350 A.2d at 614. Relying on this finding, we concluded that even though the State Legislature may well have an interest in protecting minors from the stigma accompanying a criminal record, such an interest cannot be allowed to abrogate a defendant's right to fair and effective cross-examination. *Id.* Thus we held our own state constitutional right to confrontation to include the right to use so much of a witness's prior juvenile records, not too remote in time, as might reflect adversely on credibility. *Id.* at 590, 350 A.2d at 614.

In this case defendant had the right under our state constitutional guarantee to confrontation, to use as much of this witness's DCF records as might reflect adversely upon her credibility. Denying defendant's request to produce the witness's DCF records and sustaining the state's objection to his cross-examination of this witness on her possible relationship with DCF improperly interferred with his right to confrontation.

■ The remedy in this situation depends entirely on the nature of the records excluded. For this reason, if this were the only issue involved, this case would be remanded to the Superior Court with instructions that the court produce and review in camera all records maintained by DCF regarding this witness. If the court found that those records would create a basis for an attack on this witness's credibility, defendant would be granted a new trial. If the records from DCF did not reveal any information that adversely reflected on this witness's credibility, the judgment of conviction would be affirmed.

■ The next issue raised involves the exclusion of testimony regarding the victim's alleged marijuana use prior to her encounter with defendant. Kelly argues that it was error to exclude testimony by both the victim and her treating physician about the use of marijuana during the twenty-four-hour period prior to the alleged rape. He claims that such evidence of drug use bears directly on the victim's credibility and on her ability to accurately perceive the events around her at the time she claims she was raped.

During the state's direct examination of the treating physician, Dr. Lisa Carr, the state had the doctor testify to the authenticity and accuracy of the emergency room records she had prepared during her examination and treatment of the victim. However, the records were not offered as full exhibits by the state. Later, during his cross-examination of Dr. Carr, defendant attempted to question her about a notation in her records regarding the victim's consumption of beer and use of marijuana within the twenty-four-hour period preceding the doctor's examination. The state's objections to the admission of this evidence were sustained.

We are of the opinion that defendant should have been allowed to cross-examine Dr. Carr about the contents of her emer-

---

**1.** Disclosure of DCF records is allowed pursuant to G.L.1956 (1988 Reenactment) § 42–72–8(b) of the department's enabling legislation and as permitted under the Confidentiality of Health Care Information Act, G.L.1956 (1987 Reenactment) § 5–37.3–4(b).

gency room records. Regardless of the fact that the records had not been made a full exhibit, the witness had identified and referred to the records during direct examination. In 1987, this court held that it would be error for a trial justice to prohibit, on relevance grounds alone, questions regarding whether a witness was under the influence of drugs at the time the incident being testified to occurred. *State v. Carrera*, 528 A.2d 331, 334 (R.I.1987).

"[E]vidence of use of drugs is admissible *to show that the witness was under the influence of those drugs at the time of the events to which he or she is testifying*. Such evidence of drug use bears on the question of whether the witness was accurately perceiving the events around him or her, certainly a matter of interest to the finder of fact." *Id.* at 333.

In this case the evidence of the victim's drug use less than twenty-four hours before the alleged assault was reasonably relevant to her ability to perceive and recall the events in question accurately, and was not so inflammatory or prejudicial so as to outweigh its probative value. Although we recognize the trial court's concern over the length of time between the victim's use of marijuana and the alleged assault, as a physician Dr. Carr might well have been qualified to testify to any lasting effects of marijuana. For this reason it was error not to permit Dr. Carr to be questioned about the use of marijuana that she had noted in the emergency room record.

▮ Contrary to the state's assertion, the information in question does qualify for the medical-diagnosis exception to the hearsay rule. Rhode Island Rules of Evidence 803(4). This exception applies to any information reasonably pertinent to diagnosis or treatment. The underlying rationale for this rule is that the patient has a strong motive for truthfulness in order to receive proper medical attention. *Id.* at Advisory Committee's Notes. Because this exception does not allow for the admission of facts or events surrounding a patient's injury that have no bearing on a doctor's diagnosis or method of treatment, *State v. Barber*, 468 A.2d 277, 278 (R.I.1983)(citing

*State v. Burgess*, 465 A.2d 204 (R.I.1983)), such portions of the record can be excised by the court before the report becomes a full exhibit.

Doctor Carr was specifically allowed to testify out of turn because she had plans to leave the area on vacation. The trial justice and the attorneys knew she would not be available for further testimony after the day of her appearance. Nevertheless, the trial justice sustained the objections of the prosecutor, and gave little latitude to defense counsel in his cross-examination. The trial justice gave counsel an opportunity after the doctor left the stand to prepare subpoenas that would require the doctor to return; however, they were never served because the doctor could not be found. It would have been better, in order to avoid prejudice to defendant, knowing the doctor would be unavailable later, to allow a wider latitude in cross-examination of a witness presented out of turn.

▮ It also appears to us that the cross-examination of the victim regarding her use of marijuana should have been allowed under our holding in *Carrera* where we said, "Such evidence of drug use bears on the question of whether the witness was accurately perceiving the events around him or her, [and is] certainly a matter of interest to the finder of fact." *Carrera*, 528 A.2d at 333. Because of its crucial importance in a jury's assessment of a witness's credibility, it is inherent that the defendant's guarantee of confrontation include the right to cross-examine witnesses on their ability to perceive and remember the events to which they are testifying. *Id.* (citing *State v. Burke*, 522 A.2d 725, 732 (R.I.1987); *State v. Manocchio*, 496 A.2d 931, 934 (R.I.1985), *vacated, Rhode Island v. Manocchio*, 475 U.S. 1114, 106 S.Ct. 1627, 90 L.Ed.2d 175 (1986), reheard with same results, *State v. Manocchio*, 523 A.2d 872 (R.I.1987)). Disclosure of the victim's use of marijuana less than twenty-four hours before the alleged assault was not so inflammatory or prejudicial as to outweigh its probative value.

▮ As far as the remaining issues are concerned, they are without merit.

The trial justice properly excluded evidence of the victim's prior sexual conduct. *State v. Gibbons*, 418 A.2d 830 (R.I.1980). The trial justice properly precluded the attempted impeachment of a state's witness through a summary of her expected testimony furnished in response to discovery, which summary the witness had neither prepared nor adopted. See, Rhode Island Court Rules Annotated 1988–1989 at p. 380, (Reporter's Notes to Rule 16 of the Superior Court Rules of Criminal Procedure). The remaining issues raised by the defendant need not be addressed in our opinion.

For the reasons stated above, the defendant's appeal is sustained, the judgment appealed from is vacated, and the papers of the case are remanded to the Superior Court for a new trial.