DECISION RE: DOCUMENTS REGARDING GAP WIDTH CHARTS AND SURVEY
Before this Court is a motion in limine, filed by Ford Motor Company ("Ford"), by which Ford seeks an order excluding a collection of ninety-two documents from evidence in the underlying products liability action and prohibiting any reference to the documents at trial. The documents, which Ford has attached to its motion, are described, simply, as "regarding `Gap Width Charts and Survey.'" (Ford's Mot. In Limine to Exclude Gap Width Charts and Survey 1 [hereinafter Ford's Mot.].) Carol Dodson ("Dodson"), in her capacity as executrix of the estates of the late Cecil and Doris Dodson ("the Dodsons"), objects to the motion and has filed a memorandum in support of her objection.
 I. Ford's Motion In Limine to Exclude Gap Width Charts and Survey
In the underlying products liability action, Dodson seeks damages from Ford, alleging, inter alia, that the Dodsons' 1982 Ford Crown Victoria was defectively designed and manufactured. (Dodson's Fourth Am. Compl. 3-4.) Dodson alleges that Ford's defective design and manufacture of the vehicle caused the vehicle to catch fire, which, in turn, caused the Dodsons' house to catch fire. Dodson alleges that, as a result of the fire, Cecil Dodson sustained serious injury and Doris Dodson died. (Id. at 4.)
Dodson asserts that the ninety-two documents at issue were "prepared by Ford during its investigation into the cause of ignition switch fires in Ford motor vehicles." (Pl.'s Objection to Ford's Mot. In Limine to Exclude Gap Width Charts and Survey 1 [hereinafter Dodson's Objection].) Dodson explains that these documents "clearly demonstrate" that between 1981 and 1995, Ford's ignition switches "did not maintain the design minimum gap width while in use," which, Dodson argues, is significant because "Ford acknowledges that the primary cause of the ignition switch fires in its vehicles" was gap width deterioration. (Id.)
In its motion, Ford lists five reasons for the exclusion of these documents:
 (1) The documents are irrelevant as the plaintiff cannot establish the gap width between the B+ terminal and the phenolic wall in the ignition switch supplied with the Dodson vehicle did not conform to the vehicle specifications;
 (2) Admission of the document into evidence would invite the jury to speculate as to whether the gap width in the ignition switch supplied with the 1982 Crown Victoria was below specifications;
 (3) The documents are inadmissible hearsay and its [sic] contents is [sic] also hearsay;
 (4) The plaintiff cannot lay a foundation for the admissibility of the documents; and
 (5) The probative value of the evidence is outweighed by the unfair prejudice to Ford and the jury's confusion that would result if the evidence is permitted to go to the jury.
(Ford's Mot. 1-2.) These five reasons collapse into just two arguments. Ford's first argument is that insofar as the ninety-two documents have any relevancy in the underlying products liability action, their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." R.I.R. Evid. 403. Ford's second argument is that the ninety-two documents are inadmissible hearsay.
 II. The Scope of Dodson's Objection
Before addressing the merits of Ford's motion, this Court first must ascertain the scope of Dodson's objection. As noted, Ford described the ninety-two documents attached to its motion, simply, as "regarding `Gap Width Charts and Survey.'" (Ford's Mot. 1.) Ford, however, does not specify which of the ninety-two documents, if any, are the gap width charts and which, if any, are the survey. The documents, themselves, are hardly self explanatory.
The lack of clarity in Ford's motion is problematic because Dodson's objection appears not to correspond exactly to Ford's motion. Ford's motion has ninety-two documents attached to it, but only the first three of these documents are attached to Dodson's objection. Furthermore, Dodson mischaracterizes Ford's motion as seeking "to exclude from the jury's consideration agap width chart and survey" instead of documents "regarding `Gap Width Charts and Survey.'" (Dodson's Objection 1 (emphasis added).) Of the three documents attached to Dodson's objection, only one could be considered a chart, but there are two such charts among the ninety-two pages attached to Ford's motion.[1] From the motion and objection, therefore, this Court cannot determine whether Dodson's objection covers only the three documents attached to it or all ninety-two documents attached to Ford's motion. As a result, this Court has undertaken a thorough review of Dodson's proposed trial exhibits and determined that Dodson, indeed, seeks to admit all ninety-two documents.[2] This Court, therefore, treats Dodson's objection as extending to the entire collection of documents attached to Ford's motion.
 ANALYSIS I. Relevance and the Rule 403 Balancing Test
As noted, Ford, argues that the ninety-two documents attached to its motion "regarding `Gap Width Charts and Survey,'" are irrelevant because Dodson cannot establish that the gap width between the B+ terminal and the phenolic wall in the Dodson vehicle's ignition switch did not conform to the vehicle specifications. This Court finds, however, that even if Dodson, indeed, cannot prove that the gap width did not conform to the vehicle specifications, the ninety-two documents are not, perse, irrelevant.
Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As noted, Dodson argues that the ninety-two documents "clearly demonstrate" that between 1981 and 1995 Ford's ignition switches "did not maintain the design minimum gap width while in use," which, Dodson argues, is significant because "Ford acknowledges that the primary cause of the ignition switch fires in its vehicles" was gap width deterioration. (Id.) This Court is satisfied that the ninety-two documents are relevant as tending to show, "when coupled with other Ford documents and testimony . . . that Ford produced defective ignition switches and that Ford knew that the switches were, in fact, defective." (Dodson's Objection 2.) This Court finds, therefore, that the relevance of the ninety-two documents is not conditioned upon Dodson's having established that the gap width between the B+ terminal and the phenolic wall in the Dodson vehicle's ignition switch did not conform to the vehicle specifications.
Furthermore, this Court has reviewed the record and found no basis to support a conclusion that the probative value of the ninety-two documents "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." In Rhode Island, it is well-settled that "[t]he determination of the value of evidence should normally be placed in the control of the party who offers it." Boscia v. Sharples,860 A.2d 674, 678 (quoting Wells v. Uvex Winter Optical, Inc.,635 A.2d 1188, 1193 (R.I. 1994)). And, "[u]nless evidence is of limited or marginal relevance and enormously prejudicial, the trial justice should not act to exclude it." Id. Accordingly, Ford's argument that insofar as the ninety-two documents have any relevancy in the underlying products liability action their "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" fails.
 II. Hearsay
In its motion, Ford argues that the ninety-two documents it seeks to exclude are inadmissible hearsay. In her objection to Ford's motion, Dodson admits that the documents are, indeed, hearsay. Nevertheless, Dodson argues that the documents are admissible because they "fall within exceptions to the hearsay rule." (Dodson's Objection 2.) Specifically, Dodson asserts that the documents are admissible under R.I.R. Evid. 803(6) and 804(b)(3).
A. Rule 803(6)
Rule 803(6), entitled "Records of Regularly Conducted Activity," is better known as the "business-records exception to hearsay."[3] Fondedile, S.A. v. C.E. Maguire, Inc.,610 A.2d 87, 93 (R.I. 1992). In Fondedile, the Rhode Island Supreme Court held that
 [t]o be admissible under Rule 803(6), a hearsay business record must satisfy four general requirements. First, the record must be regularly maintained in the course of a regularly conducted business activity. Second, the source of the information must be a person with knowledge. Third, the information must be recorded contemporaneously with the event or occurrence, and fourth, the party introducing the record must provide adequate foundation testimony.
Id. at 93-94 (citations omitted). The court added that "[t]o provide adequate foundation a party must prove the first three requirements and authenticate the document or record." Id. at 94. In Boscia v. Sharples, 860 A.2d 674, 679-80 (R.I. 2004), the court held, moreover, that "[r]ecords admitted under Rule 803(6) must be authenticated through the testimony of the custodian of records or some `other qualified witness.'" Seealso R.I.R. Evid. 803(6) ("as shown by the testimony of the custodian or other qualified witness"); Blue Coast, Inc. v.Suarez Corp. Indus., 870 A.2d 997, 1007 (R.I. 2005); State v.Carrera, 528 A.2d 331, 335-336 (R.I. 1987) (lack of testimony from a custodian of records regarding preparation of the documents rendered documents inadmissible as business records). Rule 803(6) does not define "custodian" or "qualified witness," but the Rhode Island Supreme Court has held that a witness lacking personal knowledge of the making and keeping of the business records is not competent to authenticate them. Id.;cf. United States v. Franks, 939 F.2d 600, 602 (8th cir. 1991) ("Rule 803(6) is satisfied if the custodian `demonstrates that a document has been prepared and kept in the course of a regularly conducted business activity.'" "It is unnecessary that the identification witness have personal knowledge of the actual creation of the document."). Thus, to satisfy the fourth requirement, Dodson must offer the testimony of a witness with personal knowledge of the making and keeping of Ford's records.
According to Dodson's proposed trial exhibits, Dodson will seek to admit the ninety-two documents through the testimony of Dr. Myron Kayton ("Dr. Kayton"), one of Dodson's expert witnesses. Dr. Kayton, however, does not have the requisite personal knowledge of the making and keeping of Ford's records. Thus, Dr. Kayton is not competent to authenticate the ninety-two documents. In fact, Dodson has not identified any witness who is competent to authenticate the documents or who has the requisite personal knowledge of the making and keeping of Ford's records.
In Fondedile, the court explained that "[t]he business-records exception to hearsay is premised on the unusual reliability of records supplied by systematic checking and on a business's [sic] reliance on the precision of records created through regular habits." 610 A.2d at 94. Dodson has not shown, however, that there is a witness who has the requisite knowledge to establish that the ninety-two documents are Ford's business records. Although Paul Laskowski ("Laskowski"), a retired Ford engineer with some knowledge of this case, possibly could have been competent to authenticate the documents, Laskowski has already given his trial testimony through Dodson's deposition of him, and Dodson did not seek to introduce the documents through him at that time. Accordingly, this Court finds that Dodson has not satisfied and, based on the state of the current record, cannot satisfy the fourth requirement for admission of the ninety-two documents under Rule 803(6). Therefore, the ninety-two documents are not admissible under Rule 803(6).
B. Rule 804(b)(3)
Rule 804(b)(3), entitled "Statement Against Interest," provides, in pertinent part, that:
 [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true
is "not excluded by the hearsay rule if the declarant isunavailable." (Emphasis added). In her objection, Dodson attributes the ninety-two documents to Ford and argues that they fall within the ambit of Rule 804(b)(3) because they, "when coupled with other Ford documents and testimony, reveal that Ford produced defective ignition switches and that Ford knew that the switches were, in fact, defective." (Dodson's Objection 2.) Dodson, however, fails to address the unavailability requirement.
Rule 804 defines "unavailability" as including:
 situations in which the declarant (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or (2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or (3) testifies to a lack of memory of the subject matter of his statement; or (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or (5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means.[4]
R.I.R. Evid. 804(a). Assuming that this Court were to agree with Dodson's argument that the documents are attributable to Ford and that they are statements against Ford's interest, the documents are, nevertheless, inadmissible under Rule 804(b)(3) because Dodson has failed to show that Ford is unavailable as a witness.
C. Rule 801(d)(2)
Dodson, in her objection, does not argue that the ninety-two documents are admissible under Rule 801(d)(2). In her memorandum in opposition to Ford's objections to the exhibits offered into evidence by Dodson during Laskowski's trial testimony, however, Dodson argues that certain documents offered into evidence during Laskowski's trial testimony are admissible under Rule 801(d)(2) because the documents are referenced in another Ford document, titled "Ignition Switch Collection Log." Because each of the ninety-two documents attached to Ford's motion is referenced in the Ignition Switch Collection Log, this Court will, herein, address Dodson's Rule 801(d)(2) argument.
Rule 801(d)(2) provides that:
 [a] statement is not hearsay if . . . [t]he statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. Here, Dodson seeks to offer the ninety-two documents against Ford, the party-opponent. The ninety-two documents, therefore, are admissible nonhearsay statements, provided that the documents are statements by the party-opponent, as defined in Rule 801(d)(2).
As noted in her memorandum in opposition to Ford's objections to the exhibits offered into evidence by Dodson during Laskowski's trial testimony, Dodson argues that certain documents are admissible under Rule 801(d)(2) because they are referenced in the Ignition Switch Collection Log, which is a catalog of Ford documents, compiled by Ford "after a duly diligent and extensive search for documents relating to the ignition switch assembly that was incorporated into the 1984-93 passenger car and light trucks." (Ford's Supplemental Resp. to Dodson's Eighth Req. for Produc. of Docs. [hereinafter Ford's Supp. Resp.].) Dodson argues that because each document in the Ignition Switch Collection Log is listed with a corresponding "SOURCE" and "DEPARTMENT," the Ignition Switch Collection Log illustrates a "demonstrable nexus of people and departments to the investigation and discussion of ignition switch issues," which, Dodson argues, establishes that "[e]ach document was written by one or more Ford employees," that "[f]or the employees represented on each documents [sic], the ignition switch issues that appear on the face of each document are within the scope of their employment," and that "[e]ach document was made during the scope of one or more employee's employment." (Dodson's Mem. In Opposition to Ford's Objections to the Laskowski Exs. 13-14 [hereinafter Dodson's Mem. re: Laskowski Exs.].) Accordingly, Dodson argues that the Ignition Switch Collection Log establishes that the documents are statements by the party-opponent, as defined in Rule 801(d)(2). Based on Ford's explanation of the Ignition Switch Collection Log, this Court is persuaded that, because each of the ninety-two documents attached to Ford's motion is referenced in the Ignition Switch Collection Log, Dodson has established the authenticity of the ninety-two documents. Rule 901 of the Rhode Island Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence to support a finding that the matter in question is what its proponent claims." In more specific terms, "the proffering party must identify the exhibit by showing that the information it contains or otherwise reveals is relevant to the pertinent factual issues," which means that:
 a document that appears to contain relevant information is inadmissible unless the proffering party shows that the document is somehow related to the dispute before the court, as, for example, by showing that it is a record generated by a party and that it concerns transactions at issue in the litigation.
Weinstein's Federal Evidence § 901.02 (2nd ed. 2002). The Rhode Island Supreme Court has held that "[i]n making Rule 901 determinations, trial justices must decide whether there is enough support in the record to conclude that it is `reasonably probable' that the evidence is what its offeror proclaims it to be." State v. Oliveira, 774 A.2d 893, 926 (R.I. 2001) (quotingState v. Griffin, 691 A.2d 556, 558 (R.I. 1997)). This Court is satisfied that the ninety-two documents are documents from Ford's Ignition Switch Collection, pertaining to the ignition switch assembly installed in Ford passenger cars and light trucks between 1984 and 1993.
As Dodson correctly notes in her memorandum in opposition to Ford's objections to the exhibits offered into evidence by Dodson during Laskowski's trial testimony, however, "the foundation for non-hearsay statements by an agent of a party-opponent pursuant to Rule 801(d)(2)(D) requires more specific proof that for authentication under Rule 901." (Dodson's Mem. re: Laskowski Exs. 11.) That Dodson has established the authenticity of the ninety-two documents does not mean that Dodson has established the admissibility of the documents under Rule 801(d)(2). Indeed, this Court finds that Dodson has failed to establish that the documents are statements by the party-opponent, as defined in Rule 801(d)(2), because Dodson has failed to identify who created the ninety-two documents.
Ford is a corporate entity — an artificial person — and cannot speak for itself. See Fletcher Cyc. Corp. § 4630 (2000) ("Admissions or declarations by a corporation against its interest, and those of its officers and agents binding it, may be received against it"). Thus, the ninety-two documents must either be the statements of persons authorized by Ford to make such statements or the statements of Ford's agents or servants concerning a matter within the scope of their agency or employment, made during the existence of the relationship. See
R.I.R. Evid. 801(d)(2)(C)-(D). In her objection, Dodson attributes the ninety-two documents to Ford, asserting that they were "prepared by Ford during its investigation into the cause of ignition switch fires in Ford motor vehicles." (Dodson's Objection 2-3.) Dodson, however, fails to identify who created the ninety-two documents. Indeed, Dodson fails to establish that the documents were prepared by Ford. The Ignition Switch Collection Log lists the source but not the author of each document. That the documents were culled from Ford's Ignition Switch Collection does not mean that the documents were prepared by Ford.
In Fondedile, the Rhode Island Supreme Court held that the party introducing documents into evidence bears the burden of laying a proper foundation. "Paramount to this requirement," the court explained, "is the identification of the declarant." Id.
Because Dodson has failed to identify who created the ninety-two documents, the documents cannot be attributed to Ford. Dodson, therefore, has failed to establish a proper foundation for the documents. Consequently, the ninety-two documents are not admissible under Rule 801(d)(2).
D. Rule 803(8)
In Ford's objections to Dodson's proposed trial exhibits, Ford poses additional arguments for the exclusion of documents. Ford broadly argues that Dodson's proposed trial exhibits, apparently including the ninety-two documents attached to Ford's motion, do not fall within the hearsay exception carved out by R.I.R. Evid. 803(8). Rule 803(8) provides that certain "[r]ecords, reports, statements, [and] data compilations . . . of public offices or agencies" are not excluded by the hearsay rule, even though the declarant is available as a witness. Dodson, however, does not argue that the documents are admissible under Rule 803(8). Dodson asserts that the ninety-two documents are attributable to Ford, not a public office or agency. Rule 803(8), therefore, does not apply.
 III. R.I.R. Evid. 404 and 608
In Ford's objections to Dodson's proposed trial exhibits, Ford also argues that Dodson's proposed trial exhibits are inadmissible under R.I.R. Evid. 404 and 608. Rule 608, entitled "Evidence of Character and Conduct of Witness," governs the admissibility of "opinion and reputation evidence of character" and "specific instances of conduct" for the purpose of "attacking or supporting [a] witness' credibility." Dodson, however, does not seek to introduce the ninety-two documents for the purpose of attacking a witness' credibility. Dodson argues that the ninety-two documents "clearly demonstrate" that between 1981 and 1995 Ford's ignition switches "did not maintain the design minimum gap width while in use," which, Dodson argues, is significant because "Ford acknowledges that the primary cause of the ignition switch fires in its vehicles" was gap width deterioration. (Dodson's Objection 1.) Dodson, therefore, seeks to introduce the ninety-two documents to show that Ford failed to maintain the design minimum gap width in its ignition switches during the period when the Dodson vehicle was assembled. Accordingly, Rule 608 does not apply.
Rule 404 provides, in relevant part, that:
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent harm and that the fear was reasonable.
As noted, however, Dodson seeks to introduce the ninety-two documents to show that Ford failed to maintain the design minimum gap width in its ignition switches during the period when the Dodson vehicle was assembled. Dodson is not using evidence of other acts to prove Ford's character in order to show that Ford acted in conformity therewith; Ford's failure to maintain the design minimum gap width between 1981 and 1995 is not "evidence of other acts." Ford's argument that the ninety-two documents are inadmissible under Rule 404, therefore, fails.
 CONCLUSION
This Court finds that though Ford's other arguments for the exclusion of the ninety-two documents attached to Ford's Motion In Limine to Exclude Gap Width Charts and Survey fail, Dodson has failed to establish the requisite foundation for admission of the documents under any exceptions to the hearsay rule. This Court concludes, therefore, that the ninety-two documents are inadmissible hearsay and that, to the extent that Dodson seeks to admit the documents without curing the hearsay problem, the documents must be excluded from evidence in the underlying products liability action.[5]
[1] The first of the ninety-two documents attached to Ford's motion is a chart entitled "AIR GAP VS. MODEL YEAR FIELD /FLEET SAMPLES AND PRODUCTION CONTROL CHART DATA." At the bottom of the chart appears the designation "INGR 6934." The seventy-fifth document is a chart very similar to the first document. Indeed, both charts have the same title. At the bottom of this document appears the designation "INGF 1992."
[2] Due to the high volume of documents in the underlying products liability action, this Court requested and received copies of the parties' proposed trial exhibits and their corresponding objections and responses thereto.
All ninety-two documents are included in Exhibit 243, which is labeled "Book of Ford documents. The first document is Part 4(A) of Exhibit 243, which is labeled "Gap Width Chart — 1981-1995." (Dodson's Proposed Trial Exs.) The second document is Part 4(D) of Exhibit 243, which is labeled "Fox Ignition Switch High Mileage Analysis." (Id.) The remaining ninety documents comprise Part 5 of Exhibit 243, which is labeled "Documents including `Gap Width' as produced by Ford to plaintiff." (Id.)
Several of the ninety-two documents are also listed in a second proposed exhibit. The fifty-third and fifty-fourth documents are also in Exhibit 103 — "9/22/92 — Ignition Switch Task Force Meeting;" the fifty-seventh document is also in Exhibit 195 — "Graft;" the sixtieth through sixty-fifth documents are also in Exhibit 193 — "DC Police Fleet;" the seventy-second through seventy fourth documents are also in Exhibit 187 — "By Gap Width;" and the seventy-fifth and seventy-sixth documents are also in Exhibit 127 — "3/9/95 — Air Gap vs. Model Year Field/Fleet Samples Chart." (Id.)
[3] Rule 803(6) states that the following is not excluded by the hearsay rule, even though the declarant is an available witness:
 Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, another person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term `business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
[4] "A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying." R.I.R. Evid. 804(a).
[5] In its motion, Ford puts forth a double hearsay argument, alleging that the documents are "hearsay within hearsay." (Ford's Mot. 1.) Because this Court has determined that the documents are inadmissible hearsay, this Court declines to address Ford's double hearsay argument at this time.