350 A.2d 611.

STATE *vs.* HERBERT E. MYERS, JR.

JANUARY 28, 1976.

PRESENT: Paolino, Acting C. J., Joslin, Kelleher and Doris, JJ.

584

JOSLIN, J. This case is here on the appeal of Herbert E. Myers, Jr., who was found guilty of first degree murder by a Superior Court jury and was sentenced to life impris-

onment. He assigns several errors, the principal being the trial justice's refusal to permit unlimited inquiry into the juvenile records of two witnesses without whose testimony his conviction would have been most unlikely, if not impossible.

The facts relevant to the allegedly erroneous exclusion of the juvenile records may be briefly stated. Brian E. Mastrofine and Donald J. Kelley, both juveniles, were at defendant's home in Providence on August 25, 1974, when his sister complained of mistreatment by her husband, the decedent. Thereupon, defendant, accompanied by Mastrofine and Kelley, drove in an automobile to the decedent's residence. Upon arrival, defendant and Kelley called the decedent's name. After several minutes the decedent appeared carrying a crowbar, whereupon defendant allegedly pulled a gun from his belt and shot at him. At that point, according to the state's testimony, decedent, followed by defendant, fled into an adjoining alleyway and disappeared from sight. Several shots were heard, then defendant reappeared, gun in hand, and said: "Let's get out of here." The decedent's body was later found in the alleyway. The defendant denied shooting the decedent and insisted that the fatal shots had been fired by Kelley.

The defendant argues that he should have been permitted to use Mastrofine's and Kelley's Family Court adjudications in order to impeach their credibility and he asserts that only in that way was it possible to provide the jury with a satisfactory basis for evaluating the conflicting versions of the killing. The trial justice acceded in part to defendant's request, allowing the use of evidence directly related to the incident out of which the murder charge against defendant grew or to any charge that had been brought against either Mastrofine or Kelley subsequent to the date of the homicide. His refusal to permit

disclosure of any other adjudications is advanced by defendant as his principal ground for reversal.

At the root of the trial justice's exclusionary ruling is G. L. 1956 (1969 Reenactment) §14-1-40 which provides that:

> "No adjudication upon the status of any child in the jurisdiction of the court shall operate to impose any of the civil disabilities ordinarily resulting from a conviction, nor shall any child be deemed a criminal by reason of such adjudication, nor shall such adjudication be deemed a conviction, nor shall any child be charged with or convicted of a crime in any court, except as provided in this chapter. The disposition of a child or any evidence given in the [Family] court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence operate to disqualify a child in any future civil service application, examination or appointment."

Language of similar import in statutes of other jurisdictions has customarily been construed as evidencing a clear and unmistakable legislative intent to provide for the confidentiality of juvenile records and to prohibit their use irrespective of whether the person whose credibility is being attacked is the defendant himself or a prosecution or defense witness. *Woodley* v. *State,* 227 Ind. 407, 408-09, 86 N.E.2d 529, 529-30 (1949) (defendant as witness); *State* v. *Kelly,* 169 La. 753, 755-58, 126 So. 49, 50-51 (1930) (prosecution witness); *Commonwealth* v. *Katchmer,* 453 Pa. 461, 463-66, 309 A.2d 591, 593-94 (1973) (defense witness). Moreover, that prohibition is generally held to apply to criminal trials in courts of general jurisdiction, particularly if the controlling statute, like that in this state, specifically so provides. *State* v. *Williams,* 473

S.W.2d 388, 389-90 (Mo. 1971); *State* v. *De Paola*, 5 N. J. 1, 17-18, 73 A.2d 564, 573 (1950).[1]

All of these cases, however, antedate *Davis* v. *Alaska*, 415 U. S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and it is undoubtedly for that reason that the main thrust of defendant's argument is directed not at how our statute should be construed, but to whether in light of *Davis* the limitation imposed upon the scope of his cross-examination of Mastrofine and Kelley deprived him of the right of confrontation guaranteed by the sixth amendment of the Federal Constitution and by art. I, sec. 10 of our own Constitution.

Thus, defendant contends that in the *Davis* case the Court, in substance, held that the sixth amendment's guarantee of confrontation connotes something more than the right to face witnesses; that its essential purpose is to secure the opportunity of cross-examination, that is, an opportunity for an examination not only to test perceptions and to probe for reliability, but also to discredit witnesses; and that when so conceptualized the right of confrontation supersedes the state's interest in preserving the anonymity of a juvenile offender.

But the state here counters — and Mr. Justice Stewart states in his concurring opinion at 321, 94 S.Ct. at 1112-13, 39 L.Ed.2d at 356 — that the cross-examination in the *Davis* case was designed solely to establish the possibility of the witness' bias and prejudice, and that the Court neither held nor suggested that "* * * the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."

---

[1]While we have not directly passed on how far our ban on disclosure extends, we have in *obiter dictum* said that a prior juvenile record is not available to impeach a defendant who testifies in his own defense. *Taylor* v. *Howard*, 111 R. I. 527, 530, 304 A.2d 891, 894 (1973).

Whether Mr. Justice Stewart's concern was that the majority opinion should not be read as permitting the use of a juvenile record as a general impeachment of a witness' character as a truthful person, or whether instead it was merely to underscore his judgment that their holding is limited to allowing impeachment by demonstrating a witness' bias, prejudice, or ulterior motive is unclear. His opinion thus provides little aid in resolving the parties' disagreement about the parameters of the majority opinion, a dispute mirroring that among those courts which have considered the question. *Compare State* v. *Deffenbaugh,* 217 Kan. 469, 471, 536 P.2d 1030, 1033-34 (1975) (apparently construing *Davis* to apply to general impeachment of a witness' credibility), *with Commonwealth* v. *Ferrara,* Mass., 330 N.E.2d 837, 840-43, *and State* v. *Brown,* 132 N. J. Super. 584, 585-87, 334 A.2d 392, 393-94 (1975) (both interpreting *Davis* to pertain only to impeachment by showing bias or prejudice).

We can, of course, enter the lists and by exploring *Davis'* nuances attempt to forecast how the Court will ultimately decide whether the confrontation clause requires that an accused be allowed to impeach an adverse witness by using prior juvenile adjudications reflecting adversely on his credibility, that is to say adjudications which, had they been for offenses committed by an adult, would be punishable by death or imprisonment in excess of 1 year, or involve dishonesty or false statements regardless of the punishment. *See* Fed. R. Evid. 609(a). But that exercise would at best be speculative, and might result, as it has in the past, in our adopting a view at variance with that ultimately selected by the Supreme Court. *See State* v. *Soroka,* 112 R. I. 392, 398-401, 311 A.2d 45, 48-50 (1973) (search incident to an arrest for a minor misdemeanor); *In re Holley,* 107 R. I. 615, 618-21, 268 A.2d 723, 725-27 (1970) (right to counsel at a pre-indictment lineup). An

alternate and seemingly preferable course calls for us to decide the case on our view of the extent of the right of confrontation guaranteed by our State Constitution which tracks the language of the comparable guarantee in the Federal Constitution.[2]

Under this approach it appears to us that the *Davis* rationale reaches beyond its immediate factual confines. That rationale stresses the traditional role of cross-examination as the principal vehicle for testing the "believability of a witness and the truth of his testimony" and for providing a defendant in a criminal case with an opportunity to discredit a witness by introducing evidence of his prior criminal record. *Davis* v. *Alaska, supra* at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353.

To refuse this defendant that opportunity might result in denying him the only available means of challenging — and the jury a way of evaluating — the truthfulness of two witnesses whose testimony played a crucial role in his conviction. We recognize that the Legislature out of its solicitude for the future well-being of our youth and in order to protect minors from the stigma which attaches to a criminal record has prohibited the disclosure of evidence about them which, had they been adults, would have been available to attack their credibility. But we do not believe that such an enactment, however beneficent it may be in other respects, can be allowed to abrogate the right of an accused to cross-examine thoroughly witnesses against him and thereby provide the jury with information which may affect its judgment on the ultimate issue of guilt or innocence.

Accordingly, we hold that the exposure of Mastrofine

---

[2]Both the sixth amendment to the Federal Constitution and art. I, sec. 10 of the State Constitution provide that:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *."

and Kelley to an attack upon their credibility falls within the ambit of our own state constitutional guarantee to defendant of the right to be confronted by the witnesses who testified against him, and of the right to be afforded an opportunity to use so much of those witnesses' prior juvenile records, if any, as might reflect adversely on their credibility, and, in accordance with *State* v. *Lombardi,* 113 R. I. 206, 319 A.2d 346 (1974), are not too remote in time. If the challenged ruling excluded such records, it was " ' "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Brookhart* v. *Janis,* 384 U. S. 1, 3.' *Smith* v. *Illinois,* 390 U. S. 129, 131 (1968)." *Davis* v. *Alaska, supra* at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.

Whether there was such an exclusion in this case thus depends upon the nature of the records banned by the trial justice. Because of his ruling the papers before us do not even hint at what those records will reveal and hence the case must be remitted to the Superior Court. If, upon disclosure, that court finds that those records afford a basis for an attack on Mastrofine's or Kelley's credibility, defendant must be granted a new trial. If, on the other hand, it finds otherwise, then whether defendant is entitled to a new trial will turn on how we dispose of his other assignments of error. Some of those assignments would in any case require consideration because of the likelihood that they will arise in the event that a second trial is necessary because of an erroneous exclusion of juvenile records.

The first of those assignments is the trial justice's failure to instruct the jury on second degree murder. That charge is required only if the evidence in a case would support a second degree murder conviction. *State* v. *Goff,* 107 R. I. 331, 336, 267 A.2d 686, 688 (1970); *State* v. *Prescott,* 70 R. I. 403, 420, 40 A.2d 721, 729 (1944). On

that question the determinative factor is the time lag between the formation of the homicidal intent and the killing itself. If that premeditation is more than momentary, the murder is in the first degree and no charge on second degree murder is necessary; if it could be less, then the offense may be murder in either the first or second degree, and a charge on both must be given. *State* v. *Saccoccio*, 50 R. I. 356, 361, 147 A. 878, 880 (1929); *State* v. *Fenik*, 45 R. I. 309, 315, 121 A. 218, 221 (1923).

In this case a medical examiner testified that the decedent received 5 gunshot wounds, all of which entered through his back. Three of them were fatal, either individually or collectively. Both Mastrofine and Kelley testified, however, that defendant first shot at the deceased when the two were face-to-face and only several feet apart. The deceased, followed by defendant, then fled into the adjoining alley, and several more shots were heard. Because the evidence is uncontradicted that the fatal gunshot wounds entered the deceased's back and that such shots were not fired until after the decedent had turned and run, it is apparent that the first shot could not have accounted for the death. Consequently, more than a barely appreciable length of time elapsed between defendant's first shot at the deceased and the firing of the fatal shots. There was, therefore, no evidence upon which a second degree murder conviction could rest, and accordingly defendant was not entitled to the requested instruction.

The defendant also objected to the trial justice's refusal to instruct the jury that an accomplice's uncorroborated testimony should be carefully scrutinized. Even were we to assume that Kelley was an accomplice and that his testimony was uncorroborated, this objection would still lack any merit. This is so because, whatever the law may be elsewhere, the rule in this state that "* * *

the testimony of an accomplice, even though entirely without corroboration, is sufficient to sustain a conviction," makes the requested instruction unnecessary. *State* v. *Pella,* 101 R. I. 62, 69-70, 220 A.2d 226, 231 (1966).[3]

The defendant's final objection is that the trial justice erred in calling Kelley as his own witness. That objection is urged for the first time in this court. The defendant concedes that the contemporaneous objection rule embodied in Super. R. Crim. P. 51 would ordinarily preclude him from claiming error at this stage of these proceedings. Nonetheless he argues that strict compliance with that procedural requirement should be excused in this instance because insistence thereon would deprive him of his constitutional protections. *State* v. *Quattrocchi,* 103 R. I. 115, 117 n.1, 235 A.2d 99, 101 n.1 (1967). The constitutional violations he charges are to his right to a fair and impartial trial and to the effective assistance of counsel as guaranteed respectively by art. I, sec. 10 of the State Constitution and by the sixth amendment to the Federal Constitution.

In recent times an increasing number of defendants have claimed deprivation of these constitutional rights. Unfortunately, however, the very breadth of the principles invoked has too often made them a convenient peg on which to hang a constitutional hat — a label for claims lacking in any real substance. In our judgment this is what the defendant has done in this case.

We remit the case to the Superior Court for a determination of whether within the guidelines here established, Mastrofine's or Kelley's previous juvenile records were of a nature that would have permitted their use to impeach credibility. If that court on a nunc pro tunc basis finds

---

[3]In *State* v. *Pella,* 101 R. I. 62, 69, 220 A.2d 226, 230 (1966), we held that it was unnecessary to instruct the jury that it "must receive and consider the testimony of [an accomplice] with caution."

that they were, the judgment of a conviction must be vacated and the defendant given a new trial. If, however, it should be found that the prior records do not qualify as impeaching evidence, then the Superior Court should take no action and the judgment of conviction will stand, subject, however, to the defendant's right to prosecute a further appeal limited to the question of whether the witnesses' prior juvenile records were of an impeaching nature.

It is so ORDERED.

Mr. Chief Justice Roberts did not participate.

*Julius C. Michaelson*, Attorney General, *William Granfield Brody*, Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline, John F. Cicilline*, for defendant.