STATE

v.

Khalil KHOLI.

No. 94–370–C.A.

Supreme Court of Rhode Island.

Feb. 29, 1996.

Andrea J. Mendes, Special Asst. Attorney General, Aaron Weisman, Assistant Attorney General, for Plaintiff.

Paula Rosin, Chief Appellate Counsel, Richard Casparian, Public Defender, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

This case comes before the court on the appeal of the defendant, Khalil Kholi, from a judgment of conviction of ten counts of first-degree sexual assault of his two stepdaughters, Amy and Julie.[1] The defendant was sentenced to life imprisonment on each count, counts 1 through 6 to run concurrently with one another, but consecutively to counts 7 through 10. On appeal, the defendant seeks to have his convictions vacated and to have the case remanded to the Superior Court for a new trial. We deny the defendant's appeal in regard to all counts. The facts of the case insofar as pertinent to this appeal are as follows.

The victims, Amy and Julie, were ages four and eight, respectively, when their mother divorced their father and began a relationship with defendant. Soon thereafter defendant moved in with the mother and daughters and became a father figure to the girls. The girls testified that defendant controlled the household finances and was the family's sole disciplinarian. The defendant engaged in various sexual acts with both girls when they were very young and sexual intercourse and fellatio when they became teenagers. On December 23, 1989, defendant married the girls' mother, becoming their stepfather.

Amy testified that defendant engaged in repeated incidents of digital penetration of her vagina from the time she was approximately the age of five until she entered the sixth grade, at which time defendant began to demand sexual intercourse. By the time she reached the seventh grade Amy had engaged in sexual intercourse with defendant. Amy testified that she told her mother defendant was "touching her" after defendant digitally penetrated her when she was five and after having sexual intercourse with her when she was in the seventh grade. At the age of seventeen, Amy's boyfriend encouraged her to speak to a school counselor about defendant. The school counselor, in turn, encouraged Amy to tell her biological father about the abuse, and she did. Amy's father arranged for her to see a professional counselor, who reported the abuse to the Department of Social Services in Massachusetts.

Julie testified that defendant digitally penetrated her vagina for the first time when she was seven years old. The defendant first demanded that Julie perform oral sex on him when she was approximately seven or eight. From this point onward, defendant often made Julie perform fellatio on him. When Julie was eight or nine years old, defendant disrobed her and took graphic pictures of her vagina. Afterward, defendant repeatedly threatened to show the pictures to Julie's mother and said that if he did, Julie would have only herself to blame. Julie never disclosed the abuse to anyone until her younger sister confided her own accounts of their stepfather's abuse. Both girls testified that defendant would condition the giving of necessities or the granting of privileges upon his obtaining sexual favors from them.

In support of his appeal, defendant raises five issues that will be considered in the order in which they appear in defendant's brief. Additional facts will be supplied as necessary in order to form a basis for determining these issues.

I

Challenge to the Denial of the
Motion for Mistrial

The defendant asserts that the trial justice erred in failing to grant a mistrial or to give an immediate cautionary instruction after sustaining defense counsel's objection to the

---

1. Amy and Julie Smith are fictitious names.

state's attempt to introduce evidence that defendant once broke a glass over the hand of a friend of Julie. In response to a pretrial motion to exclude this evidence, the trial justice reserved decision but granted defense counsel's request that prior notice be given before inquiry into the matter was made. At trial the prosecutor did not inquire about the alleged incident during the presentation of his case in chief. During cross-examination of defendant, however, the prosecutor asked, "Did you ever commit any acts of violence or strike any [of Amy's or Julie's] friends?" Prior to defendant's answer, defense counsel objected and moved for a mistrial. The trial justice sustained defense counsel's objection but ruled that a mistrial was not warranted:

"All that is here is a question about some other friend. There has been testimony in the case he had slapped his wife on occasion. There's been testimony he slapped the girls. He's now testified that he slapped them on occasion. I'm going to be charging the jury, and I have already told them that questions are not evidence. This certainly wasn't a question of whether or not he has assaulted anyone in the past; merely whether he struck any of their friends. I sustained the objection to the question. The motion to pass is denied."

The defendant contends that the prosecutor's cross-examination question was so prejudicial as to prevent the jury from rendering an impartial verdict. He argues that the question evoked "inexpiable prejudice" requiring a new trial. See State v. Gallagher, 654 A.2d 1206, 1211–12 (R.I.1995); State v. Ordway, 619 A.2d 819, 828 (R.I. 1992); State v. Caprio, 477 A.2d 67, 73 (R.I. 1984). We do not agree. It is well settled that a ruling in regard to a mistrial lies within the sound discretion of the trial justice. State v. Brown, 619 A.2d 828, 831 (R.I.1993). The ruling of a trial justice on a motion for mistrial is entitled to great weight and will not be disturbed on appeal unless it is clearly wrong. Id. In evaluating an allegedly prejudicial question, the trial justice must assess the potential prejudicial impact of the question, considering all available facts and circumstances. State v. Mora, 618 A.2d 1275, 1282 (R.I.1993) (citing State v. Brown, 522 A.2d 208, 210–11 (R.I.1987)). Only when

the "question so inflames the passions of the jury as to prevent their calm and dispassionate examination of the evidence" will a mistrial be necessary. Brown, 522 A.2d at 211 (citing State v. Mancini, 108 R.I. 261, 273–74, 274 A.2d 742, 748 (1971)).

We agree with the trial justice that the prosecutor's question in the instant case was unlikely to have inflamed the jurors' passions against defendant. The evidence against defendant in respect to his sexual abuse of Amy and Julie was overwhelming. We hold that the trial justice did not err in ruling that the prosecutor's question failed to meet the mistrial standard embodied in Brown.

Nor are we persuaded by defendant's argument that State v. McDowell, 620 A.2d 94 (R.I.1993), requires reversal of defendant's convictions. In McDowell this court held that the admission of other crimes through the rebuttal testimony of an alleged victim for the purpose of impeaching the cross-examination statements of the defendant was reversible error. Id. at 96. In the present case, defense counsel's objection to the prosecutor's question was sustained. The prosecutor was thereby prevented from introducing evidence impeaching defendant's cross-examination testimony. Therefore, the only issues are whether the posing of the question itself prejudiced defendant and, if so, whether that prejudice prevented the jury from passing impartially upon the issues in the case. Brown, 522 A.2d at 210–11.

The defendant contends that the posing of the question itself resulted in the type of incurable prejudice we recognized in Ordway and Gallagher. However, the questions posed in Ordway and Gallagher implicated those defendants in crimes similar to the ones for which they stood trial. Gallagher, 654 A.2d at 1211–12; Ordway, 619 A.2d at 827. Unlike those situations, the question asked here did not implicate defendant in other bad acts involving sexual assault.

The defendant also argues that the failure of the trial justice to give a cautionary instruction immediately after sustaining defense counsel's objection to the question re-

quires that he be granted a new trial. We disagree. If the prejudice can be cured, as it certainly could be here, a mistrial will be ordered only if we are convinced that the cautionary instructions were untimely or ineffective. *State v. Hoyle*, 122 R.I. 45, 47–48, 404 A.2d 69, 70 (1979); *State v. Marrapese*, 116 R.I. 1, 7, 351 A.2d 95, 98 (1976). In measuring the effectiveness of the trial justice's instructions, we look to the whole record. *Marrapese*, 116 R.I. at 8, 351 A.2d at 99. Looking to the record before us, we note that the trial justice cautioned the jurors four times prior to defense counsel's objection not to consider remarks or questions by counsel as part of the evidence to be considered by them. Again, in his final charge to the jury, the trial justice instructed that "[r]emarks, statements or personal opinions expressed by counsel in your presence during the trial or in final arguments are not evidence and are not to be considered by you as evidence during your deliberations." We hold that these admonitions were sufficient to ensure that the jury's verdict rested solely on legally admitted, competent evidence. The trial justice was not required to give any further instruction respecting the question that in the context of this case was relatively innocuous.

## II

### Scope of Cross Examination

The defendant contends that the trial justice erred by permitting the state to cross-examine him about an uncharged incident of sexual abuse and by permitting the victims to rebut that testimony. "In this jurisdiction cross-examination of a witness is generally limited in scope to matters testified to on direct examination." *State v. Benevides*, 420 A.2d 65, 69 (R.I.1980). "[E]vidence that may not be admissible in the prosecution's case in chief may be used in rebuttal in order to counter false statements made by the accused in the course of his [or her] direct testimony." *State v. O'Dell*, 576 A.2d 425, 429 (R.I.1990). On cross-examination "questions designed to explain, contradict, or discredit any testimony given by a witness on direct examination, or to test his accuracy, memory, veracity, or credibility" are perfectly permissible. *Benevides*, 420 A.2d at 69; *see also State v. Crowhurst*, 470 A.2d 1138, 1143 (R.I.1984). In like manner, "the proper function and purpose of rebuttal testimony is to explain" or to discredit the evidence of an adverse party. *State v. Stewart*, 663 A.2d 912, 927 (R.I.1995) (citing *State v. Donovan*, 120 N.H. 603, 607, 419 A.2d 1102, 1105 (1980)).

In the instant case both victims testified that their ability to obtain necessities, to attend social functions, or to use the telephone was always conditioned upon their acquiescence to defendant's sexual demands. The defendant denied conditioning either stepdaughter's privileges upon the performance of sexual acts. On cross-examination and over defense counsel's objection, the prosecutor questioned defendant about an allegation by defendant's older stepdaughter, Julie, that she agreed to have intercourse with defendant so that her sister, Amy, could vacation in Philadelphia. The defendant denied this accusation. Over objection the trial justice then allowed the prosecutor to call Amy and Julie as rebuttal witnesses. Amy testified that after arriving in Philadelphia, she received a frantic phone call from her mother telling her that defendant had moved out of the house and that "[she] had to come home" at once. Soon thereafter, Amy's mother phoned her a second time to tell Amy that defendant had decided to let her stay. Julie testified that defendant had moved out of the house because their mother had let Amy leave for Philadelphia without defendant's permission. Subsequently, on returning to retrieve certain belongings, defendant promised Julie that if she had sex with him, he would allow Amy to stay in Philadelphia.

Defense counsel contends that the trial justice committed reversible error by permitting the state, through evidence of the "Philadelphia incident," to "manufacture" an issue during cross-examination of defendant for the purpose of impeaching him later through inadmissible rebuttal testimony. *McDowell*, 620 A.2d at 96; *O'Dell*, 576 A.2d at 429. Inquiry concerning this incident, defendant argues, exceeded the scope of his direct testi-

mony and should therefore not have been allowed.

■ "A trial justice's rulings on the scope and extent of cross-examination," as well as his decision to permit rebuttal testimony, "are reviewed only for an abuse of discretion." *State v. Roderigues*, 656 A.2d 192, 194 (R.I.1995) (citing *State v. Morejon*, 603 A.2d 730, 736 (R.I.1992)); *see also State v. Simpson*, 520 A.2d 1281, 1284 (R.I.1987). This court will disturb the rulings of a trial justice only when such abuse constitutes prejudicial error. *State v. Anthony*, 422 A.2d 921, 924 (R.I.1980). In denying defendant's motion for a mistrial, the trial justice found that the rebuttal testimony of Amy and Julie was properly within the scope of defendant's testimony. We agree.

■ In the instant case the prosecutor's inquiry respecting the Philadelphia incident was within the proper scope of rebutting defendant's contention that he never conditioned his stepdaughters' privileges on the performance of sexual acts. The Philadelphia incident also rebutted defendant's direct testimony that he was not the family's sole disciplinarian. Hence, the rebuttal testimony of Amy and Julie directly contradicted defendant's direct examination testimony and was therefore properly admitted. The defendant's reliance on *McDowell* and *O'Dell* in support of his argument is misplaced. In *McDowell* and *O'Dell* this court held inadmissible rebuttal testimony intended to discredit statements elicited from a defendant during *cross-examination. McDowell*, 620 A.2d at 96; *O'Dell*, 576 A.2d at 429. Admission of rebuttal testimony that is intended to impeach a defendant's *direct testimony* is not error. *Id.*; *Benevides*, 420 A.2d at 69.

### III

### Challenge to Rule 16 Violation

In a related claim, defendant asserts that the state violated Rule 16 of the Superior Court Rules of Criminal Procedure when it failed to provide him with his own statements relating to the Philadelphia incident. The defendant contends he is therefore entitled to a new trial.

Under Rule 16(a)(1) and (7) the state must provide:

"(1) all relevant written or recorded statements or confessions, signed or unsigned, or written summaries of oral statements or confessions made by the defendant, or copies thereof;

" * * *

"(7) as to those persons whom the State expects to call as witnesses at the trial * * * all written or recorded verbatim statements, signed or unsigned, of such persons and, if no such testimony or statement of a witness is in the possession of the State, a summary of the testimony such person is expected to give at the trial[.]"

■ The rule was designed to prevent surprise to both parties by "requiring extensive pretrial disclosure of facts." *State v. Brisson*, 619 A.2d 1099, 1102 (R.I.1993) (quoting *State v. Wyche*, 518 A.2d 907, 910 (R.I.1986)); *State v. Powers*, 526 A.2d 489, 491 (R.I.1987). We have interpreted Rule 16(a)(1) and (7) to require the state to "disclose all relevant information covered by [a] defendant's [discovery] request." *State v. LaChapelle*, 638 A.2d 525, 530 (R.I.1994); *State v. Concannon*, 457 A.2d 1350, 1352–53 (R.I.1983); *State v. Diaz*, 456 A.2d 256, 258 (R.I.1983), and *State v. Darcy*, 442 A.2d 900, 902–03 (R.I.1982). The state's discovery obligation continues up to and during the trial itself. Super. R.Crim. P. 16(h). If the state is "aware of either relevant oral statements of a defendant or oral testimony or statements of a witness that have not been reduced to writing," the state must "summarize such statements or testimony in its discovery response." *LaChapelle*, 638 A.2d at 530. We have recognized on several occasions that a prosecutor's failure to comply with discovery may infringe upon a defendant's due-process right to establish the best available defense. *See State v. Powers*, 526 A.2d 489 (R.I.1987); *State v. Diaz*, 456 A.2d 256 (R.I. 1983); *State v. Darcy*, 442 A.2d 900 (R.I. 1982), and *State v. Coelho*, 454 A.2d 241 (R.I.1982).

It is undisputed that defendant received substantial discovery material from the state including lengthy statements written by both

victims and reports from the Pawtucket police department. Both victims' statements were replete with references that compliance with defendant's sexual demands was always a condition precedent to his granting them privileges.[2] These statements described defendant as habitually using phrases like "[l]et's do it," and "[p]ut it in your mouth" in qualifying his permission. The defendant contends that the disclosure of this information did not meet the requirement of Rule 16(a)(1). We disagree.

The state did not violate Rule 16 by failing to disclose the rebuttal testimony of Amy and Julie that included statements attributed to defendant. Rule 16(a)(1) requires the state to *summarize* relevant statements of a defendant that have not been reduced to writing. *LaChapelle*, 638 A.2d at 530. "[A] 'summary' is a '[b]rief statement of leading points of argument' and a 'concise review.'" *Id.* at 531 (quoting Webster's Universal Dictionary 1495 (Unabr. Int'l Ed.1970)). A summary must contain the "principal aspects and main points of [a defendant's] relevant oral statements." 638 A.2d at 531. However, it "need not document verbatim every sentence recalled by a witness as being uttered by a defendant. Nor does every trifling detail or minutia of oral statements or testimony need to be disclosed." *Id.*; *see also State v. Bassett*, 447 A.2d 371, 377 (R.I. 1982).

We are satisfied that there was ample disclosure prior to trial that defendant had conditioned privileges and necessities upon the victims' compliance with his sexual demands. The victims' rebuttal testimony concerning the Philadelphia incident was properly introduced to contradict defendant's denial. The defendant maintains that he relied on the prosecution's assertion that it possessed no statements attributable to him other than those disclosed in the victims' narratives and that defense counsel was therefore not prepared to counter the inculpatory evidence offered in rebuttal.

Our holdings in *State v. Sanders*, 609 A.2d 963 (R.I.1992), and *State v. Lawrence*, 492 A.2d 147 (R.I.1985), are dispositive of this issue. In *Sanders*, a first-degree sexual-assault case, we held that permitting the rebuttal testimony of the victim's sister was not an abuse of discretion even though the witness and her testimony had not been previously disclosed as required by Rule 16(a)(7). *Sanders*, 609 A.2d at 965–66. The witness's testimony was introduced to rebut the defendant's testimony that the victim had been with him all afternoon prior to the assault. *Id.* at 964. Similarly, in *Lawrence* the mother of a child victim of sexual assault was properly allowed to testify in rebuttal even though neither her status as a witness nor the content of her testimony had been disclosed pursuant to the rules of discovery. *Lawrence*, 492 A.2d at 149. The victim testified that he and the defendant had engaged in sexual acts in a wooded area across from a laundromat where the victim's mother worked. *Id.* at 148. The defendant testified that he had never sexually assaulted the minor and had not been in the wooded area for the past ten years. *Id.* The victim's mother then testified that she had seen the victim and the defendant leave the wooded area on a specific occasion. *Id.* Although this information had not been disclosed pursuant to Rule 16, this court noted:

"The defendant did not request the names of, or a summary of the likely testimony of, witnesses the state intended to call in rebuttal. Even had such a request been made, it would likely have been an impossible one to fill. The state had no way of knowing if it would call a rebuttal witness and, if it did, what that witness would be called upon to rebut. Although Rule 16 provides for reciprocal discovery, it does not require a criminal defendant to make known whether he will testify at trial. Nor does it require the defendant to furnish a summary of his expected testimony. The state had no way of knowing that defendant would take the stand and deny ever having been in the woods with [the victim]. It certainly did not know that defendant would testify that he had not

---

**2.** Both victims' statements specifically detailed numerous instances of how defendant's permission was conditioned on their performance of sexual acts. The defendant was provided with this information pursuant to discovery.

been in the woods at any time during the past ten years." 492 A.2d at 149.

In this case, when defendant denied conditioning his stepdaughters' privileges on the performance of sexual acts, he ran the risk that the state would call witnesses to rebut his testimony. We are not persuaded by defendant's argument that the instant rebuttal testimony of Julie, which included statements attributed to defendant, diluted the effectiveness of defendant's representation. At trial each victim recounted numerous instances of sexual abuse that had taken place during the fifteen years the victims lived with defendant. Testimony relating to the Philadelphia incident was cumulative at best and in no way hampered defense counsel's ability to present an adequate defense.

On the basis of the foregoing circumstances, we conclude that the state did not violate Rule 16. Therefore, we do not reach the question of whether the trial justice abused his discretion in fashioning a remedy.

## IV

### Access To Confidential Medical Records

The defendant next argues that the trial court erred in refusing to grant him broader access to Amy's psychotherapy records. The facts associated with the alleged error are as follows.

Prior to trial defendant subpoenaed Dr. Lisa Fusaro's (Dr. Fusaro) notes of her counseling sessions with Amy.[3] Pursuant to defendant's request, the trial justice reviewed the notes in camera for relevancy and determined that they were not material to the instant case. At trial, Amy testified that she had attempted suicide in an effort to escape defendant's abuse. Immediately following her testimony, defendant again requested access to Amy's psychotherapy records on the grounds that he could not effectively cross-examine Amy on her testimony without

them. He also argued that the records might contain statements Amy made to Dr. Fusaro that were inconsistent with her testimony concerning what she told her mother about her stepfather's abuse. The trial justice denied defendant's request, ruling that the records were both consistent with Amy's testimony and irrelevant to the issue of Amy's credibility.

Defense counsel next asked the trial justice if the records revealed whether Amy attributed her suicide attempt to reasons other than abuse by defendant. The trial justice reviewed the records a second time and determined that four pages of Dr. Fusaro's notes were relevant. Those pages were made available to counsel. The defendant contends that he should have been allowed full access to the notes because Amy waived the psychotherapist-patient privilege by testifying about her discussions of the abuse with Dr. Fusaro. We disagree.

Under the Confidentiality of Health Care Information Act (the act), G.L.1956 (1995 Reenactment) § 5–37.3–6(a):

"confidential health care information shall not be subject to compulsory legal process in any type of proceeding, including, but not limited to, any civil or criminal case or legislative or administrative proceedings or in any pre-trial or other preliminary proceedings, and a patient or his or her authorized representative shall have the right to refuse to disclose, and to prevent a witness from disclosing, his or her confidential health care information in any such proceedings." [4]

Despite the importance of confidentiality we have also recognized that the Sixth Amendment to the United States Constitution, through the Fourteenth Amendment, and article 1, section 10, of the Rhode Island Constitution guarantee a defendant the right to

---

3. Doctor Lisa Fusaro is a licensed psychologist who had been treating Amy since 1992. Amy refused to sign a consent form for the release of her psychotherapy records.

4. General Laws 1956 (1995 Reenactment) § 5–37.3–6(b) provides six situations in which exemption from compulsory legal process does not apply. None of these situations apply to the pres-

ent case. In *Bartlett v. Danti*, 503 A.2d 515 (R.I.1986), we declared this statute unconstitutional insofar as it prevented a court from obtaining material information by subpoena. However, this case does not entitle a litigant to obtain irrelevant and immaterial information protected by the statute.

an effective cross-examination in all criminal matters. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *State v. Sifuentes,* 649 A.2d 500, 502 (R.I.1994); *State v. Parillo,* 480 A.2d 1349, 1355 (R.I.1984); *State v. Myers,* 115 R.I. 583, 589, 350 A.2d 611, 614 (1976). This "basic right provides the principal means by which the credibility, veracity, perception and recollection of a witness may be tested." *State v. Brennan,* 526 A.2d 483, 488 (R.I.1987). Consequently this court has held that a per se bar to the introduction of a class of evidence for impeachment purposes may deny a defendant his or her right to effective cross-examination. *Parillo,* 480 A.2d at 1355; *Advisory Opinion to the House of Representatives,* 469 A.2d 1161, 1165 (R.I.1983).

■ In this state questions pertaining to the relevancy of evidence and the scope of cross-examination lie within the sound discretion of the trial justice. *Brennan,* 526 A.2d at 488; *State v. Byrnes,* 433 A.2d 658, 675 (R.I.1981); *State v. Camerlin,* 116 R.I. 726, 729, 360 A.2d 862, 865 (1976). In exercising discretion, a trial justice must "foster a search for the truth by giving reasonable latitude to the purpose of cross-examination while preserving a fair and orderly trial." *State v. Bennett,* 122 R.I. 276, 278, 405 A.2d 1181, 1183 (1979).

■ In the instant case we hold that the trial justice's in camera review of the privileged information struck the requisite balance between defendant's constitutional right to effective cross-examination and Amy's right to confidentiality. *See Advisory Opinion to the House of Representatives,* 469 A.2d at 1166. Many states, including our own, use the tool of in camera review in determining the relevancy of private information. *See, e.g., Gunter v. State,* 313 Ark. 504, 512–13, 857 S.W.2d 156, 161 (1993); *People v. District Court,* 743 P.2d 432, 436 (Colo.1987); *State v. Pratt,* 235 Conn. 595, 607–08, 669 A.2d 562, 569–70 (1995); *People v. Foggy,* 121 Ill.2d 337, 349–50, 118 Ill.Dec. 18, 23, 521 N.E.2d 86, 91 (1988); *Goldsmith v. State,* 337 Md. 112, 133–35, 651 A.2d 866, 875–76 (1995); *Commonwealth v. Bishop,* 416 Mass. 169, 177–78, 617 N.E.2d 990, 995 (1993); *People v. Stanaway,* 446 Mich. 643, 677–78, 521

N.W.2d 557, 574 (1994); *State v. Cressey,* 137 N.H. 402, 414, 628 A.2d 696, 704 (1993); *State v. Kalakosky,* 121 Wash.2d 525, 549–50, 852 P.2d 1064, 1077 (1993).

■ In camera inspection satisfies due-process requirements when a trial justice turns over *material* information. *Pennsylvania v. Ritchie,* 480 U.S. 39, 58, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40, 58 (1987). In *Ritchie,* the Supreme Court emphasized that a defendant's constitutional right to evidence does not include the unsupervised authority to search through the opponent's files or to make a materiality determination. *Id.* at 59, 107 S.Ct. at 1002, 94 L.Ed.2d at 58–59. Our own cases are in accord.

In *State v. Kelly,* 554 A.2d 632, 636 (R.I. 1989), we held that a per se denial by the trial justice to order the production of a witness's Department of Children, Youth and Families records on the grounds of confidentiality denied the defendant his right to effective cross-examination. The case was remanded to the Superior Court for the trial justice to review the records in camera and to order a new trial only if those records created a basis for impeaching the witness's credibility. *Id.* Likewise, in *State v. Myers,* 115 R.I. at 590, 350 A.2d at 614, we remanded the case to the Superior Court for the trial justice to review the testifying witness's juvenile records for a determination of the question of whether the records provided a basis for attacking their credibility.

The defendant's reliance on *State v. von Bulow,* 475 A.2d 995 (R.I.1984), is misplaced. *von Bulow* dealt with the waiver of the attorney-client privilege. It did not involve a trial justice's determination of the relevancy of information considered private under another statute. *Id.* at 1007. In the instant case a determination by the trial justice that Amy's psychotherapy records were irrelevant rendered unnecessary any consideration of whether the psychotherapist-patient privilege had been waived.

## V

### Admissibility of Prior Consistent Statements

The defendant's final argument on appeal is that the trial justice erred by admitting

the testimony of Brother Flaxington (Flaxington), which included out-of-court statements made by Amy during counseling.[5] The defendant contends that the statements should have been excluded as hearsay under Rule 802 of the Rhode Island Rules of Evidence. The state argues that the statements were not hearsay but prior consistent statements admissible under Rule 801(d)(1)(B). We agree with the state.

Rule 801(d)(1)(B) provides that a statement is not hearsay if it is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." However, a proponent must show that the prior consistent statement was made "prior to the existence of circumstances relied upon to discredit the credibility of the witness's testimony." *State v. Damiano,* 587 A.2d 396, 401 (R.I.1991); *see also Tome v. United States,* —— U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995); *State v. Haslam,* 663 A.2d 902 (R.I.1995). Prior consistent statements introduced merely to bolster the credibility of the declarant's in-court testimony are prohibited. *Damiano,* 587 A.2d at 401.

In the instant case, defense counsel's questions implied that Amy's accusations against defendant were motivated by (1) her desire to see her mother remain in Rhode Island, (2) her wish that she not live with her biological father, (3) her hope that her mother would divorce defendant and marry another who spoke better English and made more money, and (4) her intention to bring a civil suit against defendant in order to receive compensation from the Violent Crimes Indemnity Fund (indemnity fund).

Each of the motives charged by the defendant, except the last, predate Amy's statements to Flaxington rendering them ineffective in qualifying the statements as admissible. We are persuaded that the last charge, on the other hand, invokes a motive that would have postdated Amy's statements to Flaxington. Amy's statements to Flaxing-

ton indicated that she confided in him because she wished to receive help. Flaxington informed Amy that her biological father had to be notified. Subsequently, Amy's father put her into counseling with Dr. Fusaro. The record reflects that Dr. Fusaro contacted the Department of Social Services and triggered the involvement of law enforcement officials. Amy denied any intention to seek compensation from the defendant or the indemnity fund, and no evidence exists to the contrary. We are of the opinion that the trial justice satisfied himself that Amy's statements to Flaxington rebutted the defendant's charge and predated any purported motive to seek compensation. Consequently the trial justice's ruling was correct.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.

---

**5.** Brother Flaxington was a counselor at St. Raphael's Academy, the high school that Amy at-