Thomas D. MALLETTE, Jr., et al.

v.

CHILDREN'S FRIEND AND SERVICE.

No. 94–24–M.P.

Supreme Court of Rhode Island.

June 30, 1995.

 See also, 661 A.2d 67.

Stephen P. Sheehan, Wistow & Barylick, Providence, for plaintiff.

Elizabeth Flynn Sullivan, Mark P. Dolan, Rice, Dolan & Kershaw, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter is before us on a petition for writ of certiorari to review a Superior Court order granting the motion of the Department of Children, Youth and Families (the department) to quash a subpoena issued by the plaintiffs Thomas D. Mallette, Jr., and Deborah T. Mallette, individually and as parents and next friend of Christopher Mallette, a minor (the Mallettes).[1] For the reasons set forth below we reverse the Superior Court order and remand the matter to the Superior

---

1. Although Children's Friend and Service is named as the defendant in the above caption, the defendant in this dispute is the Department of Children, Youth and Families.

Court. The facts and procedural history are briefly summarized below.[2]

On December 3, 1991, Thomas D. and Deborah T. Mallette filed suit against the adoption agency, CFS, in Providence County Superior Court, alleging that employees of CFS negligently misrepresented and omitted material information concerning their adoptive son Christopher's medical and family history. During the discovery phase of the case, on May 17, 1993, the Mallettes served a subpoena duces tecum on the keeper of the records for the department requesting all information concerning Christopher's biological mother, who was at one time in the department's custody. The department moved to quash the subpoena on the ground that the records are confidential and privileged pursuant to G.L.1956 (1993 Reenactment) § 42–72–8.

After hearing the arguments of counsel, a Superior Court trial justice granted the department's motion to quash the subpoena on the basis that the information requested did not fit within any specific exception delineated under the statute. An order was entered on July 22, 1993, pursuant to the trial justice's ruling granting the department's motion. This court granted the Mallettes' petition for writ of certiorari on April 29, 1994.

The Mallettes contend that the records they seek from the department are within the scope of discovery since they contain information concerning the intellectual impairments and condition of Christopher's biological mother. That information, the Mallettes assert, is relevant and therefore discoverable pursuant to Rule 26(b) of the Superior Court Rules of Civil Procedure in their claim against CFS alleging "wrongful adoption." [3] The Mallettes further contend that even if § 47–72–8 creates a privilege as contended by the department, § 47–72–8 is superseded by Rule 26(b) by virtue of G.L.1956 (1985 Reenactment) § 8–6–2.[4]

The department asserts that § 42–72–8 renders its records both confidential and privileged under the Rhode Island Rules of Evidence. Therefore, the department argues, the records the Mallettes seek are not discoverable under Rule 26(b)(1).

The question we must decide is whether § 42–72–8 creates a privilege. This is the first time we have been called upon to address this issue. Section § 42–72–8, as amended by P.L.1994, ch. 97, § 1 provides as follows:

"Confidentiality of records.—(a) Any records of the department pertaining to children and their families in need of service pursuant to the provisions of this chapter or for whom an application for services has been made shall be *confidential* and only disclosed *as provided by law.*

(b) Records may be disclosed when necessary:

(1) To individuals, or public or private agencies engaged in medical, psychological or psychiatric diagnosis or treatment or education of the person under the supervision of the department;

(2) To individuals or public or private agencies for the purposes of temporary or permanent placement of the person, and when the director determines that the disclosure is needed to accomplish that placement;

(3) When the director determines that there is a risk of physical injury by the person to himself or herself or others, and that disclosure of the records is necessary to reduce that risk;

(4) To the family court including periodic reports regarding the care and treatment of children provided that if a child is represented by a guardian ad litem or attorney, a copy of the family court report will be made available to the guardian ad litem or attorney prior to its submission;

(5) To inform any person who made a report of child abuse or neglect pursuant

---

**2.** A thorough recitation of the facts is aptly set out in a related case, *Mallette v. Children's Friend and Service,* 661 A.2d 67 (R.I.1995).

**3.** Rule 26(b)(1) of the Superior Court Rules of Civil Procedure relating to depositions provides in pertinent part: "Unless otherwise ordered by the court * * * the deponent may be examined regarding any matter *not privileged,* which is

relevant to the subject matter, involved in the pending action * * * ." (Emphasis added.)

**4.** General Laws 1956 (1985 Reenactment) § 8–6–2 provides in relevant part that the rules of the Superior, Family and District Courts "shall supersede any statutory regulation in conflict therewith."

to § 40–11–3, whether services have been provided the child as a result of the report; provided, however, that no facts or information shall be released pursuant to this subsection other than the fact that services have been or are being provided;

(6) To permit access to child abuse and neglect track system (CANTS) computer records by physicians who are examining a child when the physician believes that there is reasonable cause to suspect that a child may have been abused or neglected; and

(7) To the office of the department of attorney general upon the request thereof by the attorney general or assistant attorney general when the office is engaged in the investigation of or prosecution of criminal conduct by another relating to the child or other children within the same family unit; and

(8) To the department of corrections in the case of an individual who has been transferred to the jurisdiction of said department pursuant to the provisions of § 14–1–7.3." (Emphasis added.)

■ In interpreting a legislative enactment, it is this court's responsibility to determine and to effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purpose. *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987). Our answer to this query depends strictly upon our construction of the statute in question. "Our analysis begins with [an examination of] the wording of the statute." *State v. Kane,* 625 A.2d 1361, 1363 (R.I.1993).

Subsection (a) of § 42–72–8 unequivocally states that the records of the department "shall be *confidential* and only disclosed as provided by law." (Emphasis added.) Subsection (b) of the statute then lists eight situations in which the records may be disclosed. The parties agree that none of the eight situations is applicable to the instant dispute.

■ In reading § 42–72–8 in its entirety, we find it obvious that by making the department's records confidential, the Legislature intended to protect the privacy interests of

parties receiving services from the department. However, nowhere in the statute is the creation of a privilege expressly mentioned. Nor do we glean from the statute the creation of a privilege by implication. We believe this omission is dispositive.

■ Thus although we recognize that the statute manifests and effectuates an important legislative policy favoring confidentiality and generally prohibits disclosure of information, the statute does not expressly or impliedly manifest an intent to create a testimonial *privilege* contemplated by the rules of evidence as argued by the department. Had the Legislature intended to create such a privilege, it could have so provided easily. The Legislature's having failed to do so, we decline to incorporate a privilege into § 42–72–8. As we have previously declared "[P]rivileges, in general, are not favored in the law and therefore should be strictly construed." *Moretti v. Lowe,* 592 A.2d 855, 857 (R.I.1991) (citing *Jordan v. Court of Appeals for the Fourth Supreme Judicial District,* 701 S.W.2d 644, 647 (Tex.1985)).

■ Having found that the records are not privileged, the question becomes whether the records are nonetheless nondiscoverable in the instant case, given their confidential status. The Mallettes contend that even though the information is indisputably confidential, the phrase "as provided by law" permits disclosure of department records by legal process such as a valid subpoena duces tecum issued pursuant to Rule 45 of the Superior Court Rules of Civil Procedure. The department contends that that phrase only refers to the eight exceptions delineated in subsection (b) of § 42–72–8.

We are compelled to agree with the Mallettes' interpretation of the phrase "as provided by law." Had the Legislature intended that disclosure should be limited exclusively to those enumerated exceptions in subsection (b) of § 42–72–8 and that the records not be subject to compulsory legal process the Legislature could have specifically so provided. *See, e.g.,* G.L.1956 (1987 Reenactment) § 5–37.3–6. We believe this interpretation of the statute is consistent with its literal terms, effectuates the Legislature's intent, and at-

tributes the meaning most consistent with its purpose.

■ Whether the records the Mallettes seek may be disclosed depends upon the relevancy of the information contained therein to the Mallettes' claim against CFS. This is a determination that must be made by the trial justice. In order to retain the confidential nature of the information, we believe an in-camera examination of the records by the trial justice is warranted in cases like this one in order to determine relevancy. If after conducting such a review, the trial justice determines the records sought are relevant and the records are disclosed to the moving party, the party objecting to disclosure may, if it so chooses, seek a protective order as to any matter not foreclosed by this opinion.

Accordingly, the petition for certiorari is granted. The Superior Court order granting the department's motion to quash is reversed. We remand the case to the Superior Court for the trial justice to conduct an in-camera review of the records to determine whether they are relevant to the Mallettes' claim against CFS.

WEISBERGER, C.J., and BOURCIER, J., did not participate.