DECISION
Before this Court is a Motion in Support of the Disclosure of State of Connecticut Department of Children and Families ("DCF") Records, filed by Kenneth Littlefield, Trust. Wynn Blanton and Lauren Blanton, individually and on behalf of their minor child, Andrew Blanton (collectively "Plaintiffs"), object to Defendant's Motion. For the reasons discussed herein, this Court denies Defendant's Motion. Defendant may not review any part of the requested Connecticut DCF records.
 I Facts and Travel
This matter arises out of the lead paint poisoning of Andrew Blanton ("Andrew") allegedly caused by a hazardous and illegal lead condition at the dwelling located at 20 Spring Garden Street Warwick, Rhode Island ("Dwelling"). (Compl. ¶¶ 1, 2.) Andrew and his parents, Wynn Blanton and Lauren Blanton, (collectively "Plaintiffs") were tenants at the Dwelling, which was owned by Kenneth R. Littlefield[1] (for convenience, "Defendant") during all relevant time periods. Id. ¶ 2. During Plaintiffs' tenancy, on October 4, 2004, Andrew was diagnosed *Page 2 
with lead poisoning. Id. ¶ 7. On November 23, 2004, a representative from the Rhode Island Department of Health ("RIDH") inspected the Dwelling and confirmed the existence of lead paint exposure hazards. Id. ¶ 8. Thereafter, on December 28, 2004, RIDH informed Defendant of the hazardous and illegal condition at the Dwelling. Id. ¶ 9. Plaintiffs filed this instant Complaint on November 26, 2008. Plaintiffs allege three counts against Defendant: negligence, negligent misrepresentation and omissions, and punitive damages. Id. ¶¶ 10-25.
Based on partial discovery — in particular, notes from a Blanton family therapy session taken by Miriam Berkman, Andrew's psychotherapist — Defendant deduced the existence of Connecticut DCF records relating to Andrew and his parents, Wynn Blanton and Lauren Blanton. Accordingly, on September 22, 2009, Defendant moved to obtain these records believing that they may contain information showing that "the minor plaintiff's behavioral, learning, developmental, emotional, and/or physical issues suffered are more likely explained by factors other than exposure to lead." (Def. Mem. Feb. 2, 2010 at 2.) Defendant maintains that the DCF records will contain admissible evidence or information that could lead to admissible evidence regarding "other sources for the alleged injuries [of Andrew] including emotional, genetic and family history [factors]." Id. at 3.
Rather than making the records fully discoverable, this Court, upon stipulation by the parties, issued an October 23, 2009 letters rogatory to the Connecticut DCF requesting an in camera review of any records relevant to Andrew's physical and emotional well-being. The Connecticut DCF obliged by providing this Court with records fitting that request. Thereafter, on February 16, 2010, Defendant submitted the instant Motion requesting permission to review the DCF records in full. Due to confidentiality considerations, Defendant did not file its Motion publicly and instead provided submittals directly to the trial justice. Plaintiffs opposed *Page 3 
Defendant's Motion in a memorandum submitted directly to the trial justice on February 19, 2010. This Court afforded both parties an opportunity to be heard on March 10, 2010.
 II Analysis A The Parties' Arguments
In its instant Motion, Defendant requests permission to review the Connecticut DCF records that this Court has already examined incamera. Defendant maintains that such records are admissible or could lead to admissible evidence relative to alternate or superceding causes of Andrew's alleged lead paint injuries. Defendant argues that although juvenile records are considered confidential in Rhode Island, they are not protected by privilege and therefore may be discovered if a court deems them relevant to a civil or criminal action following its in camera
review. Accordingly, Defendant urges that this Court find the Connecticut DCF records are relevant to the instant civil action and permit Defendant to conduct an unfettered review of these documents.
Plaintiffs oppose Defendant's Motion on two grounds. First, Plaintiffs acknowledge that Rhode Island permits discovery of juvenile records at a court's discretion after an in camera
review, but argue that this Court should apply Connecticut law, instead of Rhode Island law, to the instant discovery issue. Plaintiffs present this Court with a Connecticut Superior Court opinion holding, pursuant to Conn. Gen. Stat. § 17A-28, that Connecticut courts do not have the discretion to allow discovery of DCF records in a civil matter. Because the instant DCF records were compiled in Connecticut following an incident with the Blanton family in that state, Plaintiffs argue that Connecticut has the most significant relationship with the documents and the strongest interest in applying its law to this discovery matter. As such, Plaintiffs conclude that *Page 4 
this Court should apply Connecticut law to this discovery issue and thereby prohibit any and all disclosure of the DCF records in this civil action.
Alternately, Plaintiffs argue that even under Rhode Island's more permissive juvenile records disclosure statute, G.L. 1956 § 42-72-8, Defendant has failed to show how the DCF records could provide information relevant to the instant case. In the absence of relevant information, Plaintiffs assert that this Court cannot permit disclosure of the records. Plaintiffs contend that even if Defendant could glean family history or genetic information from the DCF records as Defendant believes is possible, Defendant has not presented this Court with any medical or scientific literature to causally connect this information to Andrew's injuries. Essentially, Plaintiffs challenge the relevance of a mother's anxiety disorder or a home life with suspected excessive alcohol use — two primary pieces of information Defendant expects to uncover in the DCF files — to the injuries Andrew exhibits and those typically caused by lead poisoning. In addition, Plaintiffs argue that Defendant can obtain all information it believes may exist in the DCF records from other sources that either are not confidential or are already in Defendant's possession — information including Andrew's living situation, daytime care, family support system, emotional environment, physical environment, observations about Andrew's social skills, physical appearance, intelligence, physical state, emotional state, and/or medical or psychological treatment or social services provided to Andrew and/or his immediate family.
 B Conflicts-of-Law
In their memoranda, Plaintiffs and Defendant allude to a conflicts-of-law issue with regard to Defendant's narrow discovery request. Both parties acknowledge that the Connecticut law (Conn. Gen. Stat. § 17A-28) on the discoverability of Connecticut DCF records is different than Rhode Island law (G.L. 1956 § 42-72-8) on the discoverability of the analogous Rhode *Page 5 
Island Department of Children, Youth, and Families ("DCYF") records. In its memorandum, Defendant simply offers this Court the option of receiving a supplemental briefing on the application of the Connecticut law if so requested, while presuming that the Rhode Island law will apply to the instant discovery issue. (Def.'s Mem. at 1.) Plaintiffs, although stating they are not "weighing in with a choice of law analysis on this discovery issue," nonetheless argue that Connecticut law should apply to the discoverability of the Connecticut DCF records because "Connecticut . . . has the strongest public interest in the protection of records generated about a child living in Connecticut." (Pl.'s Opp'n Mem. at 2.)
Plaintiffs then rely on a Connecticut Superior Court decisionGiesing v. Blefeld, to show that unlike Rhode Island, the State of Connecticut provides no exception allowing for the disclosure of confidential juvenile records in a civilmatter unless the court obtains a release from all individuals named in the records. 2001 WL 56437 at *2 (Conn. Super. Ct. 2001) (holding that Conn. Gen. Stat. § 17A-28(b) requires DCF files "relating to its child protection activities must be kept confidential," and "[t]he statute contains no exception . . . providing generally for the disclosure of information in DCF files to the court or the parties in a civil action"); see alsoAbreu v. Leone, 992 A.2d 331, 338 n. 6 (Conn. App. Ct. 2010) (referencing with approval a Connecticut Superior Court case that held "[w]hen raised in a civil context . . . trial courts have uniformly refused to order disclosure of [DCF] records, citing the lack of statutory or case law authority to order the disclosure") (internal citation omitted).[2] Accordingly, this Court agrees *Page 6 
that Connecticut law applied to the facts of the instant Motion would preclude definitively Defendant's discovery and review of the DCF records.
In its ruling, the Giesing Court recognized that "[t]he courts of some other states have determined that a civillitigant is entitled to have the court conduct an incamera inspection of confidential [DCF] records."Id. at *3 (emphasis added). The Giesing Court further explained, however, that "[t]he statutes in those states . . . differ from [Conn. Gen. Stat.] § 17A-28 in that they contain provisions broad enough to give courts discretion to admit such records." Id. Rhode Island is a state with such a statutory confidentiality exception that permits the disclosure of juvenile records, even in civil cases, if the records are relevant.See § 42-72-8(b). Essentially a Rhode Island court, after anin camera review, can determine that information contained in the juvenile records is relevant to a civil action and then allow the parties to review the documents.See § 42-72-8(b)(13) ("In a criminal or civil action, [any records of the Department Children, Youth, and Families pertaining to children and their families] or exact copies of the records shall be delivered to a court of proper jurisdiction pursuant to a subpoena duces tecum . . . shall be reviewed in camera by thetrial justice for purposes of making a determination of relevancy tothe merits of the civil or criminal action pending before thecourt, as the court may direct. If the records or a portionare relevant to the civil or criminal action, those records may beviewed and/or copied by counsel of record, at the expense of the party requesting the records. . . .") (emphasis added).
Given the seemingly different treatment of juvenile records in Connecticut and Rhode Island, this Court recognizes that there is an apparent conflict-of-laws between the forum state, Rhode Island, and the foreign state, Connecticut, where the DCF records were created. As such, *Page 7 
this divergence indicates that this Court should conduct a choice-of-law analysis querying whether the foreign state's law, Connecticut, should apply to this confidentiality/privilege issue facing the Rhode Island forum's court.[3] However, this Court finds that regardless of the *Page 8 
apparent difference in the two states' laws, the instant discovery issue merely presents a false conflict because, as elucidated below, the application of either rule produces the same result: Defendant is prohibited from reviewing the DCF records. See Fashion House,Inc. v. K-Mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989) ("It is a well-established-and prudential-principle that when theresult in a case will not be affected by the choice of law, an inquiring court, in its discretion, may simply bypass thechoice.") (emphasis added); Avco Corp. v. Aetna Casualty Surety Co., 679 A.2d 323, 330 (R.I. 1996) ("[Plaintiff's] choice-of-law contention is therefore . . . feckless [where thetrial justice's] finding would have been the same regardless of whether he opted for application of the New York, the Connecticut, or the Rhode Island law.") (emphasis added). As such, because this Court reaches the same result regardless of whether Connecticut or Rhode Island law is applied, there is no true conflict, and this Court shall apply Rhode Island law, the law of the forum state, to the instant discovery and privilege question. See,e.g., 3039 B Street Associates, Inc. v. LexingtonIns. Co., — F.Supp.2d —, 2010 WL 1802045 at *3 (E.D. Pa. May 3, 2010) ("Where a false conflict . . . exists, the Court's inquiry is at an end and the law of the forum applies.").
 C Confidentiality, Relevancy, and the Applicationof G.L. 1956 § 42-72-8(b)(13) to the Connecticut DCF Records
Rhode Island's Legislature clearly evinces the intent to maintain the confidentiality of DCYF juvenile and family records, which encompass the DCF records implicated in this case.See § 42-72-8(a) ("Any records of the department pertaining to children and their families in *Page 9 
need of service pursuant to the provisions of this chapter; or for whom an application for services has been made, shall beconfidential and only disclosed as provided by law.") (emphasis added); see also Mallette v. Children's Friendand Service, 661 A.2d 74, 76 (R.I. 1995) (acknowledging that "the Legislature intended to protect the privacy interests of parties receiving services from the [D]epartment [of Children, Youth, and Families]"). However, this Court notes that our Legislature and Supreme Court declined to create a blanket privilege for such records and in certain circumstances, a litigant or other interested individual still may be allowed to discover the content of juvenile and family records. See § 42-72-8(b)-(c) (listing fourteen exceptions where juvenile and family "records may be disclosed when necessary"); Mallette, 661 A.2d at 76 ("[A]lthough we recognize that the statute manifests and effectuates an important legislative policy favoring confidentiality and generally prohibits disclosure of information [contained in juvenile records], the statute does not expressly or impliedly manifest an intent to create a testimonial privilege contemplated by the rules of evidence. . . .").
Here, Defendant argues that the exception listed in § 42-72-8(b)(13) applies to the DCF records. He purports that this Court's stipulated in camera review should have revealed that all the documents provided by the Connecticut DCF are relevant to the instant case and this characterization therefore permits Defendant to review the records in full. Section 42-72-8(b)(13) states in pertinent part:
 In a . . . civil action, the records or exact copies of the [DCYF] records shall be delivered to a court of proper jurisdiction pursuant to a subpoena duces tecum, . . . [and] shall be reviewed in camera by the trial justice for purposes of making a determination of relevancy to the merits of the civil . . . action pending before the court, as the court may direct. If the records or a portion are relevant to the civil . . . action, those records may be viewed and/or copied by counsel of record, at the expense of the party requesting the records. The court shall issue a protective order preventing dissemination of the records in any form beyond the parties . . . and *Page 10 
provided further that at the conclusion of the action, all records shall be sealed. Section 42-72-8(b)(13) (emphasis added).
However, after its in camera review, this Court finds that the DCF records are not relevant. Discovery and possible admission of the instant DCF records would serve only to unduly embarrass the Plaintiffs, would divert the factfinder's attention from the issues at bar, and would contravene the purposes of Rhode Island's juvenile records confidentiality statute. Furthermore, this Court finds that any information presented in the DCF records is available from other discoverable materials or through depositions — a factor that severely undermines the probative value of these Connecticut source materials. See State v. Kholi,672 A.2d 429, 437 (R.I. 1996) (crediting the trial court's refusal to disclose medical records to a criminal defendant where anin camera review of the doctor's notes established that the notes were both consistent with the victim's testimony and not relevant to her credibility). Accordingly, this Court denies Defendant's request to review the DCF records in any manner.
In addition, this Court denies Defendant's request for a "detailed log of the documents . . . that are withheld and a written order detailing the explicit reasons as to why each item was . . . withheld." (Def.'s Mem. at 8.) This Court acknowledges that invoking garden-variety privilege during the give-and-take of discovery requires that the party claiming privilege "make the [privilege] claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." R.I. Super. Ct. R. Civ. P. 26(b)(5);see also D'Amario v. State, 686 A.2d 82, 86 n. 11 (R.I. 1996). However, Defendants should realize that the discovery issue before this Court is a sensitive one, considering all memoranda related to this Motion were directed to the justice personally and were not publicly filed. Furthermore, though not categorically privileged, our *Page 11 
Legislature clearly sought to shield juvenile records from unnecessary disclosure. See Mallette,661 A.2d at 76 (interpreting § 42-72-8(b)(13) and stating that "the Legislature intended to protect the privacy interests of parties receiving services from the department [of Children, Youth, and Families]"). Most importantly, a privilege log serves no justifiable purpose here because this Court has already "assess[ed] the applicability of the privilege or protection" and has found such protection proper. Super. Ct. R. Civ. P. 26(b)(5). Disclosing a comprehensive list of the DCF documents and the reasons for their withholding would circumvent this Court's ruling by unnecessarily divulging details of the protected records. As such, this Court is not persuaded to grant Defendant's request.
 III Conclusion
Based on the foregoing, Defendant's Motion is denied. This Court prohibits Defendant from reviewing any parts of the confidential Connecticut DCF records and also denies Defendant's request for a privilege log of the DCF records. Counsel shall prepare an appropriate judgment for entry.
[1] Mr. Littlefield has passed away. Accordingly, the Defendant in this case technically is Mr. Littlefield's trust — the repository that will pay Plaintiffs' judgment if so required by an order of this Court.
[2] Although not a consideration in a civil matter like the instant case, this Court duly notes that the prohibition of DCF file disclosure can implicate confrontation clause and due process issues in criminal cases. As such, even states with strict confidentiality statutes, like Connecticut, must have exceptions that allow the release of records to a criminal defendant in certain circumstances. See, e.g., State v. Leduc,670 A.2d 1309, 1315 (Conn. App. Ct. 1996) ("Connecticut case law requires an in camera inspection when a defendant claims the [DCF] record may contain exculpatory material and premises that claim on the fact that the investigation of DCF involves the same incident that forms the basis of hiscriminal charges.") (emphasis added).
[3] Both parties acknowledge that Rhode Island law undeniably applies to the substantive negligence claims in the instant case because the alleged lead paint exposure and other events giving rise to the Complaint all occurred in Rhode Island. However, it remains a possibility this Court may, in its discretion, utilize the doctrine of depecage to apply foreign law to this singular discovery/privilege issue. See LaPlante v. Am. Honda MotorCo., Inc., 27 F.3d 731, 741 (1st Cir. 1994) ("Under the doctrine of depecage, different substantive issues in a tort case may be resolved under the laws of different states where the choices influencing decisions differ."); Putnam Resources v.Pateman, 958 F.2d 448, 465 (1st Cir. 1992) ("In applying Rhode Island's choice-of-law rules to the case at bar, it is important to understand the principle of depecage. In legal parlance, depecage erects the framework under which different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states."). Of course, if privilege is not a substantive issue and rather is rooted in procedure, then depecage is inapposite and this Court should apply the law of the forum to the disclosure of the DCF records. See 23 Charles Alan Wright Kenneth W. Graham, Jr.,Federal Practice Procedure § 5435 (2010) (stating that "the common law rule was that questions of evidence, including privileges, were `procedural' and governed by the law of the forum," but that this view "seems questionable when a stranger to the litigation finds that his communication is no longer privileged because it is relevant to a law suit concerning events far from his home"). As such, "[i]f one views a privilege not as a restriction on judicial power but as the creation of a substantive right then the `procedural' analysis is inadequate." Id.; see alsoState v. Heaney, 689 N.W.2d 168, 173 (Minn. 2004) (stating that "[a] question of privilege is an evidentiary question, . . . but it has a substantive component" and applying conflict-of-law analysis to determine whether the local law or the forum state's law governed physician-patient privilege).
Further adding to the procedural/substantive privilege conundrum is the Second Restatement's attempt to cull from the dearth of case law a hard and fast rule for courts to apply. 23 Wright Graham, Jr., FederalPractice Procedure § 5435 ("The literature on the subject of choice of law with respect to privileges is almost as meager as the caselaw."). Basically, the Restatement advises that "the forum will not apply its own privileges to communications in a state that has no privilege unless the privilege is based on a `strong public policy,' whatever that may mean. But in the converse situation — where the state of the communication recognizes a privilege but the forum does not — the Restatement says the privilege should also be ignored unless there is `some special reason' to give it effect." Id. (quoting Restatement (Second) of Conflict of Laws § 139 (1971)). Given the vagueness of these guidelines, many courts have interpreted the Restatement to mean that "the forum privilege [rules should apply] to all communications. This can be justified on the ground that when the legislature, or the appellate courts, deprived trial judges of the power to compel revelation of certain secrets they did not intend that the privilege be disregarded simply because it was claimed with respect to a communication that had some `significant relationship with another state.'"Id. § 5435 n. 60 (collecting cases that apply the privilege rules of the forum state rather than the state where the communication was uttered or written). As such, these treatises indicate that even if there was a conflict-of-laws between Connecticut and Rhode Island privilege here, the forum state's law would apply to the discovery of confidential DCF records regardless. In this matter, however, this Court need not unpackthe procedure/substance quandary of privilege conflicts-of-lawquestions because the instant discovery issue does not create a trueconflict.